**ASSOCIATES INVESTMENT COMPANY,**
Appellant,

v.

**F. E. LENZ, Appellee.**

No. 10355.

Court of Civil Appeals of Texas.

Austin.

March 7, 1956.

George E. Bradfield, San Antonio, for appellant.

Putman & Putman; Richard G. Strong, San Antonio, for appellee.

HUGHES, Justice.

Associates Investment Company, appellant, purchased a note secured by a chattel mortgage on a Mercury 1947 Club Coupe. The note in the sum of $911.25 and mortgage were both executed by appellee F. E. Lenz. After some payments were made on the note default occurred and the car was sold by appellant under circumstances later detailed. The proceeds of the sale were not sufficient to pay the balance due on the note and this suit was brought by appellant to recover a so-called deficiency judgment. Appellant's motion for summary judgment was denied and appellee thereafter filed a cross action alleging that his minor son, George, was the real purchaser of the car and that appellant in repossessing and selling the car has perpetrated a fraud upon his son in making false promises to him and in selling the car at a price considerably below its reasonable market value.

The jury found that appellant did not act in good faith in selling the car and that its reasonable market value at such time was $800.

Based on this verdict judgment was rendered that appellant take nothing by its suit and that appellee recover on his cross action the sum of $261.02 with interest from the date of judgment. This sum reconciles the balance due appellant on the note, interest and attorneys' fees and insurance and other interest items with the $800 value placed on the Mercury coupe by the jury.

George Lenz was eighteen years of age in 1952 when, on May 10, the Mercury coupe was purchased from Eckert and Wynn, automobile dealers in San Antonio, for $1,246.25, George paying in cash $335 and having his father execute a note for $911.25 for the balance. This note was payable in monthly installments of $60.75. Appellee's only connection with this entire transaction was to sign the note and a chattel mortgage on the car to secure its payment.

Between May 10, 1952 and January 20, 1953, George made payments, usually late, on the note so as to reduce the balance as of that date to $546.75.

About a week prior to January 20, George, realizing that he could not pay for the car and anticipating leaving San Antonio to work in Georgia, went to appellant's office and conferred with its branch manager Mr. R. D. Maddox and this conversation occurred:

"A. I told him I couldn't make the payments. He said that he would give —He would take the car in within thirty days. He could sell it, or I could make up the payments.

"Q. Within thirty days? A. Yes.

"Q. You say he said he would sell it. Did he say anything to you in regard to what price it would be sold for? A. He said he would sell it for the highest price he could get and what was left out of the money, he would give to me.

*  *  *  *  *  *

"A. He said that he would get the highest or about the evenest price that

he could get for the car, he would try his best to settle for as much as he could get for it, and what was left over * * *

"Q. Did he indicate what that price would be? A. He said that he could get the price of the car, and what was left over * * *

"Q. Get the price of the car based on what, George? A. On what the equal market value of the car was, he would try to sell it for me.

"Q. He would sell it for the market value, what they were bringing? A. Yes, sir.

"Q. All right. And then what would happen to the money? A. It would cover what I owed them, and the rest he would credit to me."

On January 20, 1953, appellant sent a form letter addressed to appellee stating that the car would be sold unless payment of the note balance was made on or before January 30, 1953.

The car was sold January 29, 1953, for $350, the sale being made in this manner:

Appellant had about 130 cars which it desired to sell. Post cards were printed and sent out to about 200 dealers inviting them to see and buy the cars, separately or in lots. No specific description was given of any car. This car was sold by a Mr. Goldsmith, a "liquidating specialist" employed by appellant for this purpose. The car was sold to a person who bought only one car.

Within four or five days after January 20, George left San Antonio and was away about two and one half months. During his absence appellant wrote appellee demanding payment of the note balance. This letter was not shown to appellee but was kept by his wife and given to George upon his return to San Antonio. Shortly thereafter George made arrangements with appellant to pay the note balance in monthly installments of $10 but made only one payment. This suit was filed May 13, 1954.

Appellant's first point is that the court erred in failing to grant it a new trial because of newly discovered evidence.

The absent witness G. E. Hendricks, a former employee of appellant, would have testified, according to his affidavit, that he and not Mr. Maddox talked with George about this car and that all he ever promised was to obtain "the best price we could get" for the car and that his father would receive any surplus and would have to pay any deficiency. This witness was not under subpoena. Appellant informed the court immediately after the noon recess that it had arranged for the witness to be present at 2 p.m. on the day of trial, the customary time for the court to reconvene in the afternoon, but the court advised counsel for appellant "that inasmuch as the witness was not under subpoena, the court would resume trial of the case at 1:00 o'clock P.M. instead of 2:00 o'clock P.M. due to the condition of the calendar of the Court." The witness could have been present at 2 p.m. Appellant did not plead surprise to any evidence and did not request any postponement or continuance.

■ Considering the nature of the proposed testimony of the witness and the circumstances just stated we believe appellant acquiesced in the court's action and hence we are of the opinion that the court did not err in refusing to grant a new trial on this ground.

In any event there is no showing that appellant did not know before the trial what the evidence of Mr. Hendricks would be. It is presumed that it did know since he had been requested to testify. The evidence was not, in our judgment, "newly discovered."

■ The other newly discovered evidence claim is not supported by affidavit or testimony and presents nothing for review.

Appellee's counsel during his argument to the jury stated "Associates Investment Company had 'under the table' dealings with the purchaser of the automobile." Objec-

tion to this argument was sustained, the jury promptly and properly instructed by the court not to consider such remark and appellee's counsel withdrew his statement.

Motion for mistrial was made and denied and appellant, by its second point, contends this was error.

The only case cited by appellant to support this point is Robbins v. Wynne, Tex. Com.App., 44 S.W.2d 946. The facts there do not resemble those here and the rule as to reversible error in regard to jury argument therein given is no longer applicable. Rules 434, 503, Texas Rules of Civil Procedure; Aultman v. Dallas Ry. & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

■ There was no evidence to support counsel's statement and it was improper. Nobody, however, knew this better than the jury and for that reason we believe that if anyone was hurt it was appellee and his counsel. At any rate we are unable to say, from a consideration of the entire record, that the argument complained of probably caused the return of an improper verdict.

Appellant's third point is that the court erred in overruling a special exception to appellee's cross action wherein the "reasonable cash market value" of this car was alleged because "under the law the price paid for the automobile at the repossession sale conclusively fixes the value of the property at the time of such sale."

Appellant's position, as we understand it, here is that the fraud alleged here is in selling the car below its market value and that this is insufficient because "the fraud must be some act done, or not done, outside of, and other than, selling the automobile below the reasonable cash market value." Two cases are cited to support this contention: Sherrod v. City National Bank of Wichita Falls, Tex.Civ.App. Amarillo, 294 S.W. 295, writ refused and Sparkman v. McWhirter, Tex.Civ.App. Dallas, 263 S.W.2d 832, writ refused.

■ In Sherrod the rule is stated that, in the absence of fraud, the price paid by the highest bidder conclusively fixes the value of property sold under a power of sale in a mortgage on personal property.

In Sparkman the rule is stated that a trustee's sale will not be avoided merely because of inadequacy of price.

■ An erroneous ruling on the exception would be of no consequence if fraud has not been established. If fraud has been proved then the court's ruling was correct. The issue of fraud will be later discussed.

The fourth point relates to the failure of the trial court to grant appellant's motion for summary judgment. The basis of this point is that the affidavit of appellee was not sufficient defensively or offensively because it was not made on his personal knowledge, did not show he was competent to testify to the matters stated and stated conclusions not facts.

■ It has been held that the action of the trial court in refusing a motion for summary judgment is not a matter for consideration on appeal. Dyche v. Simmons, Tex.Civ.App. Fort Worth, 264 S.W.2d 208, writ ref., N.R.E.; Wright v. Wright, Tex., 274 S.W.2d 670.

The last two points, by far the most difficult, are that there is no proof that appellant failed to exercise good faith in the sale of the car or towards appellee in such sale.

We wish to say that in our opinion neither party is blameless in this controversy. Appellee is at fault in permitting his minor son to shoulder all responsibility in this transaction and appellant is at fault in negotiating solely with the minor without willing to be bound by the rules governing transactions with minors and without relinquishing the legal liability of appellee.

We have set out most of the pertinent facts above and will not repeat them. We do direct attention, however, to the following provisions of the chattel mortgage under which appellant purported to act in selling the automobile:

"Time is of the essence of this agreement and if I am in default in the

payment of any sum due under this contract or fail to keep and perform any promises or agreements herein made by me, all of my right to the possession of said motor vehicle and all of my interest therein shall thereupon terminate and the owner of this contract shall be the absolute owner thereof and may take possession of said motor vehicle, either with or without demand or notice and by or without process of law and all sums paid hereunder shall be forfeited by me and retained for the use of said motor vehicle, and may sell said motor vehicle so taken at public or private sale, with or without notice to me and with or without having said motor vehicle at the place of sale and upon such terms and in such manner as the owner of said contract may determine. Said owner may bid at any such sale."

These provisions are vicious and such as to inflame the judicial mind. Whether valid or not we need not determine.

■■■ The provision that the repossessed car could be sold without notice was waived by appellant in that notice was given that sale would not be made before January 30, 1953. The sale having been made before the expiration of such time an irregularity in the foreclosure proceedings is shown which coupled with the misrepresentation made to George as to the car being sold for its market value and the grossly inadequate price for which the car was sold constitute a sufficient basis for attacking the bona fides of the sale.

While it is not shown that sale before the authorized date actually contributed to the inadequacy of the price received it was calculated to have such effect. This is sufficient. First National Bank of Houston v. South Beaumont Land & Improvement Co., 60 Tex.Civ.App. 315, 128 S.W. 436, writ denied.

The judgment of the trial court is affirmed.

Affirmed.