Walter C. POWELL, Appellant,

v.

ASSOCIATES INVESTMENT COMPANY, Appellee.

No. 3878.

Court of Civil Appeals,

Eastland.

May 15, 1964.

———◇———

Ben Henderson, Dallas, for appellant.

Robert R. Cole, Dallas, for appellee.

WALTER, Justice.

Associates Investment Company filed suit against Walter C. Powell for $18,131.66, alleged to be the balance due on twenty notes originally executed by Powell to Associates Discount Corporation and secured by chattel mortgages on automobiles. Powell filed a general denial and alleged that during the year 1959, he borrowed some money from Associates secured by chattel mortgages on automobiles which he purchased; that on or about September 1960, Associates seized fifteen of his automobiles without notice and refused to account to him for them. Powell filed a cross action against Associates and alleged that it seized eleven of his automobiles and disposed of them "in fraud of cross plaintiff's rights" to his damage in the sum of $13,950.00. He also sought damages for slander of himself and his wife.

Plaintiff's motion for summary judgment was granted and the defendant has appealed.

In support of its motion for summary judgment Associates' branch manager made an affidavit substantially as follows: that as branch manager he had control of the company's records and was acquainted with their business activities; that he was well acquainted with the defendant Walter C. Powell who was an automobile dealer in Durant, Oklahoma, and that Powell formerly borrowed money from Associates; that Powell was delinquent on twenty-four notes secured by chattel mortgages on automobiles in the amount of $27,965.00; that on September 26, 1960, he went to Durant and talked with Powell and found fifteen mortgaged cars in Powell's possession; that he repossessed the fifteen automobiles; that four of the fifteen were sold by Powell with his permission and the checks in payment therefor were endorsed to his company; that he promised Powell that he would be notified of the time and place of sale of the remaining eleven automobiles and Powell would "certainly be given an opportunity to buy the cars at their market value"; that under his "direct and continuous supervision notice of sale was mailed to Powell." The notice of sale was attached to Baker's affidavit and reads in part as follows: "You are hereby notified that on the 12 day of October, 1960, at 3:00 o'clock P. m., the undersigned will sell at public auction to the highest bidder for cash, each of the motor vehicles described on the list attached hereto * * * that said sale will be held at 115 North Katy Avenue, The city of Durant, State of Oklahoma." "On October 12, 1960, Mr. Malear held the sale which was attended by Walter C. Powell. Associates Investment Company bought the automobiles at the sale and brought them to Denison, Texas, where they were repaired at an expense of Eight Hundred Fifty Two and 82/100 dollars ($852.82) and sold * *".

Also, in support of its motion for summary judgment, Associates attached the affi-

davit of D. H. Malear, which is substantially, as follows: He was a representative of Associates; that he worked under the supervision of Mr. R. A. Baker, branch manager; that on September 29, 1960, Baker instructed him to foreclose on the automobiles; that on said date he posted notices of sale "as required by law in Oklahoma" and mailed notices to Powell; that by means of these notices "we notified Mr. Powell and the general public that the eleven (11) automobiles listed in the notices and stored in the warehouse would be sold on October 12, 1960, at 3:00 p. m."; that on said date he offered the automobiles for sale at auction; that Mr. Powell was present but did not make an offer to purchase the cars but "instead walked away from the place of the sale"; that, there being no other bidders present, and "no offers being made at the time of the sale, the automobiles were struck down and sold to Associates Investment Company for One Hundred and no/100 dollars ($100.00) each."

Powell had pleaded that the eleven automobiles that were fraudulently and forcefully seized from him had a combined value of $13,950.00 in Durant, Oklahoma. Powell and his wife filed an affidavit in opposition to plaintiff's motion for summary judgment. Mr. Powell's affidavit is substantially as follows: that he had borrowed some money from Associates and had executed to it notes and chattel mortgages on some of his automobiles; that in September, 1960, a Mr. Baker came to his place of business and repossessed eleven cars and sold four others without giving him an opportunity to secure a better price for them; that Baker informed him that he was going to foreclose on the eleven cars and that he would be notified in writing of the date, time and place of sale; that he received notices and appeared at the place of sale accompanied by Mr. Dan Russell of the Russell Used Cars and Mr. Stanley Charlton, of the 1st Street Motor Sales, Mr. Paul Evans and Mr. Paul Harton, of 1st Street Motor Sales; that all of said automobile men had informed him that they were ready, willing, and able to bid on the cars; that one Malear, who represented himself to be an agent for Associates, was at said warehouse where the automobiles were stored; that Malear then and there told him that because there were not enough bidders present he had decided not to hold the sale as announced and the sale was postponed to a later date; that Malear assured him that he would be properly notified in writing of the subsequent sale. After receiving this information from Malear, he and the other automobile dealers walked out of the warehouse; that he was never advised of any subsequent sale.

Mrs. Powell's affidavit was, in part, as follows: that after the announced sale of the eleven automobiles was cancelled and postponed neither she nor her husband were ever notified of any subsequent sale; that she learned from an automobile dealer in Durant, Mr. Dan Russell, of the Russell Used Cars, that the eleven automobiles had been taken away from Durant to an unknown place and there sold to unknown parties.

Attached to plaintiff's original petition are copies of chattel mortgages and chattel mortgage notes executed by Powell to Associates. One of the chattel mortgages designated as plaintiff's exhibit A contains a provision that if default be made in payment of said note, or if the mortgagee shall feel insecure, or if there be a breach of any other covenant, then the note shall at the option of the mortgagee, without notice, become due and payable and it further provides "and the mortgagee shall thereupon have the right to enter any of the premises of said mortgagor, with or without force or process of law, and take possession of, remove and sell chattels at public auction or private sale with or without notice, at which sale said mortgagee may become the purchaser * * *".

It is appellee's contention that at such public sale there were no bidders present and that appellee bought all of the automo-

biles for $100.00 each. Appellee's contention is that it bid all of the eleven cars in at the public sale at $100.00 each and then at a later date sold the automobiles at private sale and has credited the appellant's notes with the amount realized from the private sale. It contends that its sale of the eleven automobiles at private sale was in accordance with its rights under the mortgage.

■ It is true that the courts of Texas since Singer Sewing Machine Co. v. Rios, 96 Tex. 174, 71 S.W. 275, 60 L.R.A. 143, have recognized such foreclosure provisions in chattel mortgages to be valid and binding upon the mortgagor. The appellees exercised their power under the mortgage and repossessed the automobiles and had a right under said mortgage to "sell said chattels at public auction or private sale with or without notice." As shown by the affidavit of Baker and Malear, it elected to sell the automobiles at public auction with notice. Before it made such an election, it had the right under the mortgage to sell them at private sale without notice. Appellee's affidavits conclusively demonstrate that, a sale was made at public auction and it became the purchaser of the automobiles.

■ In Associates Investment Company v. Lenz, Tex.Civ.App., 288 S.W.2d 857, (No Writ History), the court said:

"The provision that the repossessed car could be sold without notice was waived by appellant in that notice was given that sale would not be made before January 30, 1953. The sale having been made before the expiration of such time an irregularity in the foreclosure proceedings is shown which coupled with the misrepresentation made to George as to the car being sold for its market value and the grossly inadequate price for which the car was sold constitute a sufficient basis for attacking the bona fides of the sale."

"On the hearing of a motion for a summary judgment the court must determine whether there is any issue of fact to be tried. The court cannot weigh the evidence, determine the credibility of the witnesses and try the case on affidavits. All doubts as to the existence of a genuine issue as to a material fact must be decided against the party moving for a summary judgment. The court must accept as true all evidence of the party opposing such a motion which tends to support his contention and must give him the benefit of every reasonable inference which may be drawn therefrom. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Box v. Bates, [162 Tex. 184] (Sup.Ct.), 346 S.W.2d 317." Trinity Universal Insurance Company v. Horton, Tex.Civ.App., 363 S.W.2d 376, 378 (No Writ History).

■ The appellee did not conclusively establish a valid foreclosure, therefore a material fact issue was raised.

The judgment is reversed and the cause is remanded.