**TEXAS GENERAL INDEMNITY COMPANY, Appellant,**

v.

**Lotella W. DEATON et vir, Appellees.**

No. 16560.

Court of Civil Appeals of Texas.

Fort Worth.

June 26, 1964.

Rehearing Denied July 10, 1964.

McDonald, Sanders, Nichols, Wynn & Ginsburg and Atwood McDonald, Fort Worth, for appellant.

Jim Puff and George Busch, Fort Worth, for appellees.

RENFRO, Justice.

Based upon a jury verdict the plaintiffs, Mrs. Lotella W. Deaton and husband, John Deaton, were awarded a judgment in a workmen's compensation case of total and permanent incapacity of Mrs. Lotella W. Deaton. For convenience, Mrs. Lotella W. Deaton will be hereafter referred to as plaintiff.

The jury found: (1) plaintiff sustained a personal injury to her body on or about September 4, 1962; (2) she sustained total incapacity as a natural result of the personal injury; (3) total incapacity began on September 4, 1962; (4) the incapacity is permanent; (5) plaintiff entitled to lump sum payment.

No other issues were requested. The defendant filed only a general denial.

Defendant's first nine points of error present the questions of whether there is any evidence of probative value to support the verdict, whether the evidence is sufficient to support the verdict, or else, whether the verdict is against the overwhelming preponderance of the evidence, both with respect to the extent and duration of incapacity, and with respect to whether the injury received on September 4 caused total and permanent incapacity.

Plaintiff testified: she went to work at Harris Hospital in 1958 as a nurse's aid and was working as such when she was hurt on the 4th of September, 1962. She started down some steps, stepped on an object, slipped and fell, landing on left side and left elbow. At the same time her back had a burning sensation in it. She reported to the emergency room where her arm was treated. She then went home, tried to fix dinner, but had to lie down because of pain in lower part of back and in her left hip and left leg. Her vacation started the next day. She spent the biggest part of the time in bed. She did not feel she could afford to go to a doctor because she was the only one in the family with an income. She finally called a doctor on September 16, and entered Harris Hospital where Dr. McDonald performed a spinal fusion and removed disc material from two places. She, at time of trial, was still wearing a brace. She cannot lift or stoop. She has not been released by the doctor and has not returned to work. Since the injury she has been able to do light house duties only. She feels she will never be able to work again. She can do no lifting whatever. When she takes off the brace she has no strength at all. Her back was not like that before the injury. It would be impossible for her to perform the work of nurse's aid.

On cross-examination she testified: she worked for Royal Tile Company late in 1956 and early 1957 but quit because she could not lift heavy boxes. In 1956 she entered Harris Hospital as a patient. She was having some aggravating pain in her back. Dr. Levy was her doctor. She remained in the Hospital at that time one week and one day. She also had pain in her leg. She told Dr. Levy she had prior thereto sprained her ankle, but said nothing about spraining her back. In June or July, 1960, she had acute appendicitis and was a patient in Harris Hospital, but had no back involvement. In October, 1960, she was hospitalized for upper respiratory infection. She did not have back trouble at that time. She was in the hospital in April, 1961, for chest pains and shortage of breath. In September, 1961, she was in the hospital for a hysterectomy, but had no back trouble. She was hospitalized in December, 1961, for pain in her back. She wore a back brace for a month in 1956, did not wear it again until her doctor told her to in 1961. She quit wearing it when she went home. She does not recall talking to anyone at Harris Hospital from September 4, 1962, to the time she entered as a patient on September 16. She knew Dr. Wise was the doctor who took care of employees but she did not call him. She never inquired about medical expenses or workmen's compensation.

The hospital records show that Dr. McDonald examined plaintiff on September 16. Plaintiff gave him a history of having fallen on the steps in the hospital, causing a pull in her back and left hip; of considerable aching the next morning in her lower back and left lower extremity. Dr. McDonald diagnosed her condition as "Degenerative disc disease, L-4, L-5, L-5 S-1 with probable herniations of L-4, L-5 on the left." The diagnosis concluded: "She is to be admitted at this time for a possible spinal fusion." The "Report of Operation" is rather long and gives minute details. The conclusion reads: "Operation: After exploration was carried out, the posterior elements of the L-4-5 and S-1 were prepared for chip graft fusion. The flaps were turned back laterally, preparing a raw bed for the bone chips to be accepted. Strips of cancellous bone were taken from the posterior iliac crest on the lt. These—ere placed across the prepared bed, effecting a chip graft type fusion. Wound was closed in layers, using #0 chromic catgut on the heavy fascial tissue, #000 chromic on the subcutaneous tissue and #000 silk continuous in the skin. Dressings applied, and the patient sent to the recovery room in good condition. Operation: 1. Spinal Fusion."

Defendant introduced hospital records showing treatment of plaintiff in August, 1956. The summary sheet shows an admission diagnosis of ruptured discs made by Dr. Levy. The report also shows that for about two years the patient had been having some recurring pain in the lower part of her back, and also states she stepped in a hole and wrenched her back in 1955. Defendant's exhibit 3 pertains to plaintiff's hospitalization in December, 1961. Drs. Levy, Lipscomb and McDonald were her physicians. The exhibit recites that the patient had had considerable trouble with her back for some time, that she had had an identical spell about two weeks before December 18, 1961.

It is apparent there was some evidence to uphold the jury's findings. Whether the findings are against the great preponderance of the evidence has given us considerable concern, especially in the light of the fact no doctor testified as to the probable future effect of the disc operation.

It has been held, however, that in some situations it is not necessary to present physicians as witnesses in order to prove the extent of an injury. Coca Cola Bottling Co. of Fort Worth v. McAlister, 256 S.W. 2d 654 (Fort Worth Civ.App., 1953, no writ); American Gen. Ins. Co. v. Smith, 163 S.W.2d 849 (San Antonio Civ.App., 1942, refused).

■ We have concluded that, in view of the whole record, we would not be justified in holding the findings of the jury to be against the great preponderance of the evidence.

■ Defendant's tenth point complains of the manner of submission of issue No. 2.

In issue No. 2 the jury was asked, "Do you find from a preponderance of the evidence that Lotella W. Deaton sustained total incapacity for any length of time as a natural result of the personal injury, if any, sustained by her on or about September 4, 1962?" The jury answered "yes".

Defendant objected to issue No. 2 "because said issue as framed is duplicitous in that it submits in a single issue two controlling questions, to-wit: whether or not Lotella W. Deaton sustained any incapacity as a natural result of the personal injuries sustained on September 4, 1962, and also inquires whether or not such incapacity is total."

Defendant's point of error reads as follows: "The Court erred in submitting special issue No. 2, contained in the Court's charge, because such issue was duplicitous, and required the jury to answer, in a single issue, two separate inquiries which constituted two separate elements of Plaintiff's cause of action."

In response to requests for admissions, defendant admitted that plaintiff, on the 4th of September, 1962, sustained an accidental injury while in the course of her employment with Harris Hospital. The jury in answer to issue No. 1 found that plaintiff sustained a personal injury to her body on or about September 4, 1962.

It is to be noted the objection to the issue was on the ground it inquired whether plaintiff sustained any incapacity, and whether such incapacity was total.

As we construe the issue, it inquired only if plaintiff sustained total incapacity as a natural result of the personal injury.

The following issue, No. 3, inquired as to the beginning date of total incapacity.

We believe issue No. 2 as submitted inquired as to an ultimate fact.

In view of the nature of the objection made, considered with the admissions on file and the other issues submitted, reversible error is not shown in the manner of submission of issue No. 2.

Though not precisely in point, our conclusion finds support in Meyer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W.2d 575 (1955); Argonaut Underwriters Ins. Co. v. Byerly, 329 S.W.2d 937 (Beaumont Civ.App., 1959, ref., n. r. e.); Safety Casualty Co. v. Teets, 195 S.W.2d 769 (Beaumont Civ.App., 1946, ref.). It is also interesting to note that the Honorable Kearby Peery, highly respected leader in the field of Workmen's Compensation Law, in his model "General Injury Charge Short Form", p. 95, of his Texas Workmen's Compensation Procedure, suggests the submission of total disability issue in a manner almost identical with the manner of submission of said issue in the instant case.

Affirmed.