**CONSOLIDATED UNDERWRITERS, Appellant,**

**v.**

**Joe WHITTAKER, Appellee.**

**No. 268.**

Court of Civil Appeals of Texas.

Tyler.

March 16, 1967.

Rehearing Denied April 13, 1967.

Fairchild & Hunt, Billy Hunt, Center, for appellant.

R. W. Fairchild, Vernis Fulmer, Nacogdoches, for appellee.

DUNAGAN, Chief Justice.

This suit was brought by appellee for workmen's compensation benefits for an injury alleged to have occurred on July 30, 1964. A jury trial was had in the 123rd Judicial District Court of Shelby County, Texas, in March, 1966. Judgment was entered for appellee for 401 weeks of compensation at the rate of $35.00 per week, in a lump sum, and for $612.50 for hospital and medical care. The court overruled defendant's (appellant) amended motion for new trial and it has perfected its appeal to this court.

The appellant has brought forward 24 points of error. The points of error will be discussed in an order different from that followed by the appellant.

The appellant in its points of error 7 through 14 complains that the answers of the jury to each of the first four issues are based upon insufficient evidence, as a question of fact, and that each such answer is against the overwhelming preponderance of the evidence. Such issues, and the answers thereto, were as follows:

"SPECIAL ISSUE NO. 1

"Do you find from a preponderance of the evidence that the injury sustained by the Plaintiff, Joe Whittaker, on or about the 30th day of July, 1964, was a produc-

ing cause of any total incapacity, as that term has been defined herein?

"ANSWER: 'WE DO' or 'WE DO NOT'.

"Answer: Yes—We do

"If you have answered Special Issue No. 1 'WE DO', and only in that event, then answer this issue:

"SPECIAL ISSUE NO. 2

"When do you find from a preponderance of the evidence that such total incapacity, if any, began?

"Answer by stating the date, if any.

"ANSWER: July 30, 1964.

"If you have answered Special Issue No. 1 'WE DO', and only in that event, then answer this issue:

"SPECIAL ISSUE NO. 3

"How long do you find from a preponderance of the evidence that such total incapacity, if any, has continued or will continue from the date of its beginning, if any?

"Answer by stating the period of time, if any.

"ANSWER: Permanent

"SPECIAL ISSUE NO. 4

"Do you find from a preponderance of the evidence that plaintiff sustained any partial incapacity as a result of the injury, sustained by him on the occasion in question?

"Answer: 'WE DO' or 'WE DO NOT'

"Answer: We do not                "

The appellee was an employee of L. D. Tyer Lumber Company doing sawmill work. This work required him to do lumber stacking, trip logs, tail the saw, set trimmers, work on the skid-weight and roll logs. His work involved heavy lifting,

stooping and bending. At the time of his injury on July 30, 1964, he was running trimmers. While so engaged, a two-by-six piece of lumber got caught in a chain that carried it across the trimmer and allegedly struck him in the right lower abdomen in about the area of the groin, knocking him down, injuring his lower abdomen, hips and low back; and it is further alleged that he sustained immediate total and permanent disability by reason of such injury.

It was admitted by Leonard Tyer, the owner of L. D. Tyer Lumber Company, upon direct examination, that the appellee did receive an accidental injury while in the course and scope of his employment with his company on the date alleged.

Appellee, Joe Whittaker, testified that he was 46 years of age; that he had done manual labor all of his life; that he had never had any back trouble before July of 1964; that he was injured on July 30, 1964, when a board struck him in the groin on the right side; that the blow knocked him down; that he immediately began hurting in the lower abdomen and back and has not been free of pain in either place since the accident; that pain radiated down his back and left leg; that he was taken by the foreman to Dr. Conway H. Mallery; that Dr. Mallery x-rayed his side and back and gave him a prescription; that he went back to Dr. Mallery the following day but was not able to see him because the office was closed; that he went to Dr. Hooker, Dr. Mallery's associate, three or four days later; that he went to Dr. Glen R. Johnson sometime later when his employer told him he could see any doctor he wished to see; that he saw Dr. Johnson about three weeks after the accident; that Dr. Johnson finally put him in the hospital for three days and allowed him to go home on Sunday of that week; that Dr. Johnson operated on him (for removal of his appendix) and he was released from the hospital September 2, 1964; that he remained off work until some time in February, 1965; that when he first saw Dr. Mallery the doctor told him that if he felt like it, he might "work tomorrow but don't work this afternoon;" that he has made complaints of his back hurting him to his employer; that he was employed by the Tyer Lumber Company at the time of the trial as a night watchman, and had to use a stick to make his rounds to punch the clock; that he works with a back brace prescribed by Dr. Mallery; that he is not able to work, but does it anyway with pain because he needs the money as he has no other way to feed his family.

Joe Whittaker testified further that the nightwatching work he does involves exertion that hurts him; that after working, his back hurts worse; that he has to take medicine on the job to ease his pain enough so that he can continue working; that the work he was doing after his injury and until he was hospitalized was hard work, and he was doing it in pain; that everything he has done since he was hurt has been with pain and suffering and he has not felt able to do it; that he has complained to Mr. Tyer that he couldn't do the work and Tyer told him he'd just have to do the work; that there wasn't any easy work at the sawmill and he couldn't put him on a pension; and that he has complained to Mr. Tyer many times about his back giving him trouble. He told Mr. Tyer he was wearing a back brace.

Dr. Mallery, the treating physician, testified that he first saw Joe Whittaker July 30, 1964; that he was bruised and there was some swelling present in the right groin; that there was some muscle spasm in the back and pain on percussion; that x-rays were normal except for arthritic spurring in the area of the fourth and fifth vertebrae; that an injury can aggravate an arthritic condition and a person is more likely to have pain when an injury occurs in the area of the arthritis; that he did not feel that Whittaker had been able to do hard physical work at any time since he first saw him; that Whittaker's condition had stabilized, sometimes better, sometimes worse; that lifting, bending, pulling or other heavy work is going to cause him to

have pain; that the pain has been reported to be worse after bending and sweeping; that on July 30, 1964, he complained not only of his right groin where he was struck, but also of pain in the lumbar region of his back. On examination, he found muscle spasm and pain in the back. Pain causes muscle spasm, and the existence of arthritis in the back does not mean that the person suffers pain from it; an injury to the area may cause pain in itself, and may aggravate the arthritis and cause it to become painful; if the pain still continues after a year and a half or two years, most likely it is going to be permanent. Whittaker has continued to have pain which varies in intensity; he is still seeing Whittaker; from the time he first saw Whittaker on the day of the injury, while the intervals between have varied, he has seen Whittaker on the average of every two weeks; Whittaker has consistently complained of pain in the low back, and the muscle spasm present in his back varies with the amount of pain; if Whittaker does much work, he is going to have pain; if Whittaker does heavy physical work, like lifting, bending, pulling and walking, he will have pain permanently; Whittaker told him his work was harder than he really felt like he could do, but he had to work; most every time Whittaker saw him, he would complain of pain in the back, though occasionally he would not. He was hospitalized in November, 1964, because of the persistence of the pain; Whittaker's pain was related to the intensity of the treatment and amount of work he did; after hospitalizing him and giving him intensive treatment, he was relatively free of pain in January, 1965, but after he started back to work, he started having pain again. If Whittaker could stay at rest and have intensive therapy, he might be free of pain, but if he continues doing heavy work, he won't improve.

Dr. Glen R. Johnson, who was called as a witness by appellant, testified that on his examination of Whittaker on August 17, 1964, his impression was that he had received a severe forceful injury to the right inguinal area; that on August 20, 1964, Whittaker returned with quite severe abdominal pain, and he suspected appendicitis and hospitalized Whittaker for three days for observation. He discharged him from the hospital to go home. In less than two hours after he discharged him, Whittaker came in and he and Dr. Phillips thought he had appendicitis, hospitalized him, and operated and removed the appendix, which was not diseased. He was not suffering with appendicitis. Considering the injury, the most likely thing would be that he was suffering from the injury. He actually doesn't treat enough arthritis to be able to give an opinion as to the severity of the arthritis of Whittaker. Whether a man with arthritis which is painful would work despite the pain is influenced a lot by his economic necessity—if he had no money to feed himself and his family unless he worked, he probably worked despite the pain. He found in Whittaker not only the inflammatory condition of the lower abdomen, but also the pain and suffering of the back—objectively, he had tenderness over there and it is his feeling that Whittaker had an injury to his back. Since he has not seen Whittaker since September 2, 1964, he is in no position to express an opinion as to his condition since that date or what it will be in the future. A person may have arthritis and yet have no pain or disability and an injury may excite and aggravate it, so that it becomes painful and causes total disability for life. He thought Whittaker was sincere and honest in all his complaints.

It is undisputed that it was necessary for the appellee to work to support himself and his family. It is admitted by the appellant that it has not paid appellee any compensation on account of his injury of July 30, 1964.

It would serve no useful purpose to lengthen this opinion by further detailing the testimony of the appellee and the two doctors who testified in this case and the other evidence relied upon to support the

submission and findings of the jury to the special issues in question.

We think the evidence in this case is sufficient to support the jury's findings to Special Issues 1, 2, 3 and 4. Appellant's points 7 through 14 are overruled.

In considering appellant's contention that the jury's answers to Special Issues 1, 2, 3 and 4 were so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust, we are required to weigh and consider all the evidence in the case and set aside the verdict and remand the cause for a new trial if we consider the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

We have studied the statement of facts carefully and we cannot say in applying the rules just announced that the jury's answers to these issues were so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

The record in this case, at most, presents only the situation where, on conflicting evidence, the jury in the exercise of its province, as trier of the facts, to pass on the credibility of the witnesses and the weight to be given their testimony, gave credence to the testimony of appellee and rejected that of appellant. Bituminous Fire & Marine Insurance Company v. Jones, 398 S.W.2d 577 (Tex.Civ.App., Tyler, 1966, writ ref., n. r. e.).

Basically, appellant's position is that because the evidence reflects that after his injury Whittaker worked doing hard manual labor and earned as much and more money as he had earned before his injury, for the same employer, he could not have been "totally disabled."

The rule is established in this state that the fact that an injured employee re-sumes work after injury, but only under the whip of necessity, does not necessarily preclude a finding of total permanent disability; the latter issue remains, nevertheless, one of fact to be passed upon by the jury. Southern Underwriters v. Grimes, 146 S.W.2d 1058 (Tex.Civ.App., San Antonio, 1940, dism., judg. corr.); Texas Employers' Ins. Ass'n v. Mallard, 192 S.W.2d 302 (Tex.Civ.App., Galveston, 1946, writ ref., n. r. e.); Mabry v. Travelers Ins. Co., 193 F.2d 497 (United States Court of Appeals, Fifth Cir., 1952); Pennsylvania Threshermen & Farmers Mutual Casualty Insurance Company v. Gloff, 238 F.2d 839 (United States Court of Appeals, Fifth Cir., 1956).

The appellant relies strongly on Fidelity & Casualty Company of New York v. Burrows, 404 S.W.2d 353 (Tex.Civ.App., San Antonio, 1966, err. ref., n. r. e.). This case is not in point under the facts presented in this case. The majority opinion in the Burrows case expressly stated that: "There is no evidence of hardship which would compel him to work in spite of incapacity." In the case at bar, there is evidence which was not disputed that Whittaker had to work, despite his incapacity to do so, in order to eat and feed his family.

We now turn to a consideration of appellant's first two points of error.

### "First Point

"The trial court erred in submitting Special Issue No. 1 over appellant's objection that such issue, as submitted, combined two points of inquiry material to the case in one issue in that it did not first inquire as to whether there was any total incapacity in one issue, and then subsequently inquire, in a separate issue, whether the injury of July 30, 1964, was a producing cause of any such total incapacity.

### "Second Point

"The trial court erred in submitting Special Issue No. 1 over the appellant's objection that such issue was duplicitous

and multifarious in submitting two distinct questions to the jury in one issue; these questions being whether incapacity existed, and whether or not the injury of July 30, 1964, was a producing cause of such total incapacity."

Section 10 of Article 8306, Vernon's Ann. Civ.St. provides for compensation "While the incapacity for work resulting from the injury is total, * * *." Perforce of the statute the ultimate fact issue in substance is, has the injury resulted in (or caused) total incapacity for work? This is the *single* inquiry presented in the case at bar by Special Issue No. 1.

The argument of appellant seems to be that the special issue submitted was duplicitous or multifarious, and that, under the evidence, the following separate issues should have been submitted:

(1) An issue asking whether any total disability occurred following the injury of July 30, 1964.

(2) An issue asking whether the July 30, 1964, injury was the producing cause of any total disability.

■ First, it should be recognized that the ultimate inquiry in a workmen's compensation case is whether the accident was the producing cause of the injury. We see, therefore, no error in submitting the ultimate facts which make up the claimant's recovery in such a case if they are all facts which the plaintiff must prove to make out a case. Hodges, Special Issues Submission in Texas, page 115; Meyer v. Great American Indemnity Company, 154 Tex. 408, 279 S.W.2d 575 (1955); Fidelity & Casualty Co. of New York v. Branton, 70 S.W.2d 780, 785 (Tex.Civ.App., Beaumont, 1934, writ dism.). See also Texas General Indemnity Company v. Deaton, 380 S.W.2d 719 (Tex. Civ.App., Fort Worth, 1964, writ ref., n. r. e.); Liberty Universal Insurance Company v. Burrell, 386 S.W.2d 323 (Tex.Civ.App., Fort Worth, 1965, writ ref., n. r. e.); and Texas Employers' Ins. Ass'n v. Heuer, 10

S.W.2d 756 (Tex.Civ.App., Beaumont, 1928, rehearing denied, 11 S.W.2d 566).

■ The submission in one issue of the two elements here complained of is, in our opinion, not objectionable as multifarious, duplicitous or as an improper grouping of two issues. It simply embodied the group of facts which the claimant had to prove in order to recover under his theory of total incapacity.

■ Furthermore, in this case, it seems that (1) the fact that appellee sustained an accidental injury on the date in question while in the course of his employment with appellant is undisputed, and (2) that total incapacity after the accident resulted. Therefore, even if the issue was duplicitous or multifarious, it would be harmless because all but one of the facts in the issue (i. e., producing cause) were undisputed. Wooten v. Crosby County, 219 S.W.2d 553 (Tex.Civ.App., Amarillo, 1949, writ ref.); Lloyds Casualty Co. of New York v. Grilliett, 64 S.W.2d 1005, 1006 (Tex.Civ.App., Texarkana, 1933, writ ref.).

■ Where evidence as to a fact is positive and not disputed or questioned, it is to be taken as an established fact; and the charge of the court should proceed upon that basis. Security Union Ins. Co. v. Hall, 37 S.W.2d 811, 813 (Tex.Civ.App., Amarillo, 1931, n. w. h.); Lloyds Casualty Co. of New York v. Grilliett, supra.

■ If the uncontroverted fact was inquired about along with the fact in controversy, there could be no harm if the issue was answered in favor of the party relying on the uncontroverted fact. Hodges, Special Issues Submission in Texas, page 114; Wooten v. Crosby County, supra. Points 1 and 2 are overruled.

Appellant next contends under its third point that "The trial court erred in submitting Special Issue No. 3 over appellant's objection that such issue constituted a comment upon the weight of the evidence in

that it inquired as to the length of time during which total incapacity *has* continued, and thus commented to the jury that, in the opinion of the court, such total incapacity still continued on the date of trial." (Emphasis added).

Appellant does not cite any authority in support of its contention. In fact, counsel for appellant concedes that he has been unable to locate any case where the contention here made has been passed upon by the courts.

In Issue No. 1, the court inquired whether the injury caused total incapacity. In Issue No. 2, the court called on the jury to fix the beginning date of such total incapacity, *if any*. In Issue No. 3, by inserting immediately after the words "total incapacity" the words "if any" again made it abundantly clear that the court had no opinion that total incapacity existed at all. Issue No. 3 calls on the jury to fix the duration of the total incapacity, *if any,* from the date of its beginning and Issue No. 2 calls on the jury to fix the beginning date, indicating no opinion of the court as to when it began. The inquiry in Issue No. 2 made it clear that it was for the jury to fix the beginning date at a time which, so far as the court was concerned, would be either before or after the trial date, by the words "as continued or will continue from the date of its beginning, if any."

The use of the word "has" in Issue No. 3 as submitted in the charge in this case does not imply, suggest or assume that the incapacity inquired about still existed at the time of the trial. Considering the charge as a whole, we think the jury could not have assumed, from the form of this issue, that the court was of the opinion that total incapacity existed at the time of the trial.

We believe that the trial court's submission of the issue involved was not erroneous; if we be mistaken, under the record as a whole, such constitutes harmless error as it was not one which was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Rule 434, Texas Rules of Civil Procedure.

Moreover, in viewing the charge as a whole, we think it is an unreasonable and quite unlikely conclusion that the jury was misled by Special Issue No. 3. Texas Employers Ins. Ass'n v. McKay, 146 Tex. 569, 210 S.W.2d 147 (1948); Mason v. Yellow Cab & Baggage Co., Inc., 153 Tex. 344, 269 S.W.2d 329 (1954).

Appellant complains in its fifteenth point of error of the argument of appellee's counsel in his closing argument which it contends cast aspersions upon the ability of appellee's witness, Dr. Glen R. Johnson, by injecting new and harmful matters which were outside of the record. It further contends that the argument was so harmful and prejudicial to the rights of appellant that the instruction of the court to disregard the statement could not remove the harmful effect in the minds of the jury, and such statement resulted in the rendition of an improper verdict and judgment, and the court's failure to grant it a new trial was error.

The argument complained of is as follows:

"Now, one other thing, Mr. Billy misunderstood his fine doctor up at Carthage again. He said the doctor said he was able to go back to work so far as the operation is concerned. He did so far as the operation was concerned, and he admitted twice this week and no disrespect, I think he's a fine doctor, but both times he has appeared here in this Court this week, he's admitted he missed the diagnosis and even went to the extent of operating and got in there and found—

"MR. HUNT: Please the Court, we object to stating what this witness may have done in some other case, prejudicial. We ask that the jury be instructed to disregard it.

"MR. FULMER: I join in that. I shouldn't have said that in the previous trial.

"THE COURT: I instruct the gentlemen not to consider that statement.

"And, I beg you not to consider it. That was a slip and I didn't mean it."

One of the erroneous diagnoses of appellant's medical witness, Dr. Johnson, that appellee's counsel referred to in the part of his argument to the jury, here objected to, was in another case.

Appellant cites Southwestern Greyhound Lines, Inc. v. Dickson, 149 Tex. 599, 236 S.W.2d 115; Robbins v. Wynne (Tex.Com. App.), 44 S.W.2d 946.

We do not believe the Dickson case is in point. In that case the argument complained of contained a lengthy oration filled with a highly personal violent attack upon two of the witnesses which was highly inflammatory and prejudicial. One of the witnesses was a doctor and the court said the argument was "quite susceptible of the interpretation that the witness was unfaithful to his high profession and even a person of inhuman instincts." The argument here is not of such nature. It is obvious the argument here complained of was not a personal or violent attack upon Dr. Johnson or to the effect that he was unfaithful to his profession. In fact, counsel referred to him as "a fine doctor." The argument was not such as to be considered inflammatory. The opinion in the case of Robbins v. Wynne, supra, was written in 1932. In respect to the Robbins case, it has been held in Associates Investment Company v. Lenz, 288 S.W.2d 857 (Tex.Civ.App., 1956, n. w. h.) that "the rule as to reversible error in regard to jury argument therein given is no longer applicable. Rules 434, 503, Texas Rules of Civil Procedure."

In Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953) it was said that: "The rule applied by the Court of Civil Appeals that a reversal should occur unless the court can say that the argument had no effect on the verdict has not been the controlling rule since the adoption of rules 434 and 503, Texas Rules of Civil Procedure. Cases decided prior to the adoption of the Rules have little value as precedents because they were decided under a rule which required a reversal if the court entertained any doubt of the harmful effect of the argument."

The only conceivable effect of such argument would have been to persuade the jury that Dr. Johnson was not infallible in his judgment. In this respect, it added little, if anything, to Dr. Johnson's testimony in this case that he was mistaken in diagnosing Whittaker's condition as appendicitis and operated on him for it. In view of Dr. Johnson's admission of this erroneous diagnosis in the present case, part of the statement of counsel was correct.

■ Except where they are inherently prejudicial, objectionable statements in argument are generally deemed cured where they are promptly withdrawn or corrected by counsel. This is especially true where the action is accompanied by an apology and by an appropriate instruction. 56 Tex.Jur. 2d, Sec. 322, page 683.

■ Considering the admission of the doctor that he had mistaken the diagnosis on Whittaker and operated for appendicitis; that pursuant to appellant's objection and at its request, the court immediately instructed the jury to not consider the statement of appellee's counsel; that appellee's counsel at the time apologized and also joined the appellant in his motion for the court to instruct the jury not to consider his statement in regard to the doctor's testimony in the other trial, and from the record as a whole, we do not regard the improper argument here complained of as being beyond correction by means of a proper instruction. Travelers Insurance Company v. Broadnax, 365 S.W.2d 683 (Tex.Civ.App., Texarkana, 1963, n. w. h.).

**718**

It unquestionably appears that the argument of counsel for the appellee was improper. Nevertheless, before a judgment is reversed because of argument of counsel, two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case. Royal v. Cameron, 382 S.W.2d 335 (Tex.Civ.App., Tyler, 1964, writ ref. n. r. e.); Aultman v. Dallas Railway & Terminal Co., supra; Texas Sand Company v. Shield, 381 S.W.2d 48 (Tex. Sup., 1964).

We have been compelled to examine the entire record, and in the light of the whole record, we do not think the argument was such as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

Appellant next complains by its points of error Nos. 22 and 24 of appellee's attorney's argument on the failure of appellant to call Dr. Mahon as a witness. The record reflects appellee submitted himself to Dr. Mahon for a physical examination at the request of the appellant. The appellee so testified to the jury without objection. Appellee further testified without objection about a rather detailed examination given him by Dr. Mahon. Dr. Johnson informed the jury that Dr. Mahon was an "A–1 orthopedist, a good man." The jury knew they had not heard any testimony from Dr. Mahon or any report he may have made read to them. Therefore, the jury was not informed of anything that they did not already know.

Since Dr. Mahon, who at appellant's request had examined appellee apparently a short time after his injury, was not offered as a witness for either party, counsel for appellee was entitled to call the jury's attention to the fact that the doctor did not testify. We therefore conclude the argument was not improper. Meyer v. Great American Indemnity Company, supra; Tex-Jersey Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 167, 68 A. L.R.2d 1062 (1957); Rodman Supply Co. v. Jones, 370 S.W.2d 951 (Tex.Civ.App., Amarillo, 1963, n. w. h.); Western Fire & Indemnity Company v. Evans, 368 S.W.2d 114, 115 (Tex.Civ.App., Amarillo, 1963, n. w. h.).

The other points of error not discussed in this opinion have been duly considered and deemed not to reveal any reversible error. Accordingly, they are each overruled.

Finding no reversible error, the trial court's judgment is affirmed.