**WESTERN FIRE & INDEMNITY COMPANY, Appellant,**

v.

**Betty EVANS et vir, Appellees.**

**No. 7253.**

Court of Civil Appeals of Texas.

Amarillo.

April 15, 1963.

Crenshaw, Dupree & Milam, Lubbock, for appellant.

Brown & Canon, Lubbock, for appellees.

CHAPMAN, Justice.

This is an appeal by Western Fire & Indemnity Company from a judgment for total and permanent disability based upon a jury verdict for Betty Evans et vir in a workman's compensation case.

The first five points asserted as error concern jury argument made by Sam Brown, counsel for appellees, the argument prompting the first complaint being as follows:

"Now, ladies and gentlemen of the jury, this insurance company, back before this happened, issued the Methodist Hospital a policy of insurance, a contract, and they said, in effect, 'You give us this premium money and if anybody gets hurt out there working within the course of employment, we'll pay them what we're supposed to when we're supposed to.' Oh, I guess an insurance company could be—from an analogy between this and a big gambling house."

At this point opposing counsel objected to the argument as being improper and moved for mistrial. The court instructed the jury not to consider the remark for any purpose. Later Mr. Brown argued as follows:

"Isn't it a shame—isn't it a shame that anyone, in order to secure enforcement of their contract for benefits, has to bring a law suit? I don't think there is any really serious doubt in the minds of that company that she was hurt within the course of her employment out there. I don't think there is any doubt in their minds at all. And yet, they haven't come forward and paid her one cent, not one cent of the compensation benefits to which she is entitled, and justly entitled. * * * Isn't it a shame that these companies are—isn't it a shame that Western Fire & Indem-

nity took the premium from Methodist Hospital and didn't live up to their contract?"

To that argument the court also sustained an objection and Mr. Brown stated: "Now, gentlemen of the jury, we withdraw that statement."

Mr. Brown in his argument also criticized the failure of appellant to call as witnesses Dr. Loveless, an orthopedic surgeon; Dr. Chaffin, a radiologist; and Dr. Mayfield. To the argument concerning Drs. Loveless and Chaffin objections were made to the effect that if Mr. Brown wanted an orthopedic or any other doctor they were available to him. The court replied: "All right. I'll overrule the objection." With respect to Dr. Mayfield Mr. Brown said:

"They authorized treatment by Dr. Mayfield back in August. He's been seeing her every day or every other day. Do they bring him to testify?"

Counsel for appellant objected to the impropriety of the argument as being "criticism on our part for not producing evidence that's available to the plaintiff. It is highly improper and we want our exception." The court then stated in effect that they could have their exception, thus overruling the objections to the argument. The ruling of the court had the effect, therefore, of approving the criticism by counsel of the insurance company's failure to call the doctors.

■ There is a myriad of cases holding jury argument not to be reversible and many cases holding to the contrary. We do not believe any good purpose would be served by reviewing the different Courts of Civil Appeals cases. Our Supreme Court in a fairly recent case [1] has announced rules that we believe are applicable to the record here and compel a reversal. After first stating the general rule to the effect that counsel may comment in argument on the

failure of the opposite party to call a witness employed by him, the court then held:

1. "The right to comment on the failure to call and use an employee-witness does not grow out of the unavailablity of the witness but out of his relationship with the opposite party."

2. Counsel may not undertake to tell the jury what testimony the witness would give. That would clearly be improper as getting unsworn testimony before the jury.

■ We believe it fair to say that the record shows appellant sent Mrs. Evans to Dr. Loveless for examination. Therefore, for the purpose of that examination he was an employee of the company. Under the authority of the Beck case just cited Mr. Brown had the right to comment on appellant's failure to call him as a witness. The legitimate testimony is completely silent on any relationship between appellant and Dr. Mayfield and we believe a different rule prevails with respect to him, as we shall proceed to demonstrate.

■ Mrs. Evans had testified she had been to Dr. Mayfield for treatment about 200 times after she was released from the hospital following her injury, but she admitted she had selected him as her doctor. The testimony in that regard shows:

"Q. Mrs. Evans, I believe you—after your discharge from the hospital you selected Dr. Mayfield to go to, did you not?

"A. After I was discharged from the hospital?

"Q. Uh-huh.

"A. Yes.

"Q. In other words, you picked him out and he is your doctor, is that right?

1. Tex-Jersey Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062, Syl. [6-9].

"A.  Because I couldn't get any treatment from any of the other doctors.  They were treating me for everything they shouldn't have been treating me for.

"Q.  Well, my question is, you picked out Dr. Mayfield?

"A.  I did."

As shown in previously quoted argument, Mr. Brown had made the statement outside the record to the effect that the insurance company had authorized treatment by Dr. Mayfield back in August.  We thus have in the argument the picture portrayed by counsel for appellee of the insurance company having sent Mrs. Evans to Dr. Mayfield 200 times for treatment and then refused to call him as a witness to give the jury the benefit of her physical condition.  Yet, the record shows affirmatively that she selected him herself.  There is not any testimony anywhere in the record, except the unsworn testimony of Mrs. Evans' counsel, that the insurance company had anything whatever to do with her selection of Dr. Mayfield or his treatments of her.  Under such a record Mr. Brown was telling the jury the insurance company had sent Mrs. Evans to Dr. Mayfield for treatment and was at least inferentially telling them that Dr. Mayfield would testify Mrs. Evans was suffering from a severe injury, he having treated her 200 times, and that the insurance company did not call him because he would have to testify to serious disability.  Yet, from this record the company had no relationship with Dr. Mayfield.

In view of the fact that the issue of serious injury was a hotly contested one, we believe the error amounted to such a denial of the rights of appellant as was reasonably calculated to cause, and probably did cause,

the rendition of an improper judgment.  This is particularly true when we consider the fact that the jury found total and permanent disability without any medical testimony on which to base it and when we consider the appeal to passion and prejudice made by counsel in the analogy of the insurance company to a big gambling house.[2] "The argument thus combines both the evils of introducing purported evidence not in the record and appeals to passion and prejudice."  *Houseman v. DeCuir*, 155 Tex. 127, 283 S.W.2d 732.

We are not unmindful of the holding in Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054, and Consolidated Underwriters v. Lowrie, Tex.Civ.App., 128 S.W.2d 421 (writ refused).  In the former the Supreme Court held great latitude is allowed counsel in discussing the facts and issues but in so holding the court said, "[B]ut such latitude extends only to the facts and issues raised by the evidence in the case."  In arguing that the insurance company had authorized treatment by Dr. Mayfield counsel was completely outside the record.  In the latter, the Lowrie case, the doctor whose testimony had not been produced by the insurance company had been asked by the company to make the examination of the claimant, whereas, in our case the claimant had selected Dr. Mayfield.  Thus, we believe those cases to be clearly distinguishable from the instant case.

There are several other serious points of error in the case but we believe what we have said is decisive.  Further writing would extend the opinion to unnecessary length and we would assume the other errors would not likely be present upon another trial.

The case is reversed and remanded for another trial.

2.  We do not say the gambling analogy alone, in view of the instruction, was reversible error.