**GLENS FALLS INSURANCE COMPANY, Appellant,**

v.

**Goldie Mae YARBROUGH et vir, Appellees.**

No. 4417.

Court of Civil Appeals of Texas.

Waco.

Oct. 7, 1965.

Rehearing Denied Nov. 18, 1965.

**201**

Naman, Howell, Smith & Chase, Louis Muldrow, Waco, for appellant.

McLaughlin, Clark, Fisher, Gorin & McDonald, George Clark, Waco, for appellees.

TIREY, Justice.

This is a compensation case and is the second appeal. See 369 S.W.2d 640. Perhaps we should say that in the first appeal Mrs. Yarbrough, joined by her husband, prevailed in a suit to set aside a compromise settlement agreement wherein she alone had signed the purported agreement dated March 31, 1961. The trial court found that since plaintiffs had cashed and received the $300.00 paid to Mrs. Yarbrough and had used the funds, and she and her husband being unable to return same, and since they offered to do equity, that the sum of $300.-00 paid by the insurance company to Mrs. Yarbrough be credited against the recovery of any amount because of the injuries suffered by her. The judgment of the lower court was affirmed by this court on the ground that the husband had not joined in the execution of the settlement agreement, but did not pass upon any other question.

Judgment was rendered in the case at bar on the verdict of the jury, which was favorable to plaintiffs for total and permanent disability on a wage rate of $20.01 per week for a period of 401 weeks. The defendant has appealed. We reverse and remand the judgment of the lower court for reasons hereinafter set forth.

The judgment is assailed on 33 points. Point 1 is:

"The trial court erred in admitting into evidence testimony regarding the execution of a compromise and settle-

ment agreement by the appellee, Mrs. Yarbrough, her suit to set that settlement agreement aside, the allegations of fraud with reference to that suit, the trial of the prior suit and the setting aside of the settlement agreement and in overruling appellant's objections to such evidence for the reasons stated in appellant's objections, which were and are: * * *".

The appellant set these objections out in detail.

Appellant has grouped points 1 through 26 under one statement and argument and, with reference thereto, it says:

"The above points are grouped and consolidated under a single statement and argument, because of the basic similarity of the points. They deal essentially with the one question of admissibility of certain evidence, and error committed in the presentation of that evidence.

"As previously indicated, this is a compensation case, where the appellee complained of two accidental injuries sustained in the course of her employment. The occurrence of one of the injuries was contested, and the extent and degree of incapacity were contested."

Pertinent to Point 1 Mrs. Yarbrough testified on direct-examination in part as follows:

"Q.  Had you talked to Mr. Parker Naylor, the insurance adjuster about getting compensation?

A.  Oh, I sure did; but I hadn't received it.

Q.  You had not gotten it?

A.  If I had got some, I wouldn't be up here today.

*  *  *  *  *  *

Q.  All right. Was it your intention at that time and your hope that you could go back to Haven Manor?

A.  Well, sure, I wanted to go back to Haven Manor. I'd like to be there today.

Q.  Were you getting any compensation at that time?

A.  No, sir, I have never received no compensation.

*  *  *  *  *  *

Q.  Now, from that date, the last time you talked with Mr. Parker Naylor, down to this time, Mrs. Yarbrough, have you received any compensation from this insurance company?

A.  No, sir, I haven't received one dime from them; if I had, I wouldn't have been up here today, * * *

*  *  *  *  *  *

Q.  Have you received any compensation from them by the week?

A.  No, sir, I sure haven't; I haven't received anything.

*  *  *  *  *  *

Q.  Did they send you any checks while you were in the hospital?

A.  No, sir.

Q.  Did they send you any checks while you were laid up at home after you got out of the hospital?

A.  No, sir, they haven't sent me any checks."

On cross-examination appellant's counsel developed in question and answer form:

"Q.  * * *. Now did I understand you to say Mrs. Yarbrough that you had never gotten a dime from this insurance company?

A.  Well, I have never received any compensation by the week or by the month from this company.

Q. Well, but you're not telling the jury that you have never received a dime from them, are you?

A. Well, I'm just saying that I have never received any compensation insurance, that's what I'm telling the jury.

Q. Never received any money from this insurance company?

A. I received some money, but it wasn't compensation insurance, as far as I know it wasn't.

Q. Well, they did pay you some money?

A. Yes, they paid me some to pay the doctors and the hospital bill with.

Q. Well, now, didn't they pay the doctor? Didn't they pay Dr. Oliver?

A. They sent the checks to me.

Q. All right. But those checks were for Dr. Oliver and for drugs and for Haven Manor, Weren't they?

A. Yes, sir, they sure were.

Q. And those were paid by the insurance company? Is that right?

A. Well, I suppose, because I turned them over to Q. Z. Valentine and he sent them back.

Q. All right. Now separate and apart from that, you're not telling the jury are you that you and your husband didn't receive any money?

A. Well, they sent me—give me that $300.00.

Q. That's right. And when was that?

A. Well, let's see; that—in other words before Mr. Parker Naylor told me the company was through with me.

Q. That's right. But it was after he had talked to you and you had talked to him back in April, March, April or May, somewhere back there in 1961, wasn't it?

A. It was in May because I had to go back to Dr. Oliver and Mr. Naylor had told me that—

Q. Well, I'm aware of the conversation there, but you—I did want to clarify that you are not testifying to the jury that they have never paid you a penny?

A. No, but they haven't never given me any compensation by the week like I understood I was supposed to receive.

Q. All right. You didn't get it by the week, but you did get on that occasion $300.00?

A. I received $300.00 at one time, yes."

When appellant had completed cross-examination, the appellees, over the objection and exceptions of appellant, were permitted to go into great detail with reference to the compromise and settlement agreement executed by Mrs. Yarbrough, together with the filing of the prior suit, and the court permitted the appellees to make full development of all the transactions relating to the settlement agreement and the trial of the cause and the result thereof in the trial court and in the appellate court. So, the first question that we must pass upon is: Did appellant, by its cross-examination of Mrs. Yarbrough heretofore detailed, open up the settlement agreement and the resulting trial thereon? We think the answer is "No." Mrs. Yarbrough, in her direct-examination, had testified that she talked to Mr. Parker Naylor, the insurance adjuster, about compensation and she said: " * * * I haven't re-

ceived one dime from them; if I had, I wouldn't have been up here today, * * *". It is clear that counsel for appellees had proven by Mrs. Yarbrough that she had not received any sums from the insurance company. The cross-examination, as we understand it, is in rebuttal to the direct testimony of Mrs. Yarbrough that she had received nothing from the insurance carrier when in truth and in fact she had received the sum of $300.00 from the carrier and there is no reference whatsoever that it was received in settlement. Our view is that the appellees did not have a right to go into the transaction with reference to the settlement agreement and the trial of the cause to set the settlement agreement aside. None of such matters were relevant or material to the ultimate issue of injuries and extent of disability sustained by Mrs. Yarbrough, and we think all of this testimony was highly prejudicial and no doubt caused the jury to render an improper verdict on the main issue as to the extent of Mrs. Yarbrough's disability. We think the extent of the disability sustained by her injuries is a very close one under all the facts and circumstances surrounding this record.

In 56 Tex.Jur.2d Trial, p. 615, Sec. 272, we find this general rule:

"Parties to an action are entitled to have the issues determined without reference to results of previous proceedings. Counsel may not thereafter inform the jury of findings of previous juries in the case, or of the determination reached in a criminal prosecution arising out of the transaction to be determined by the jury."

See also Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811; Houston Chronicle Pub. Co. v. McDavid, Tex.Civ.App., 173 S.W. 467; Associated Employers Lloyds v. Landin, Tex.Civ.App., 205 S.W.2d 662, n. r. e.; Looney v. Traders & General Ins. Co., Tex. Civ.App., 231 S.W.2d 735, n. r. e. See Texas Law of Evidence, McCormick and Ray, Cross-Examination of a Party, Ch.

8, Sec. 277, p. 367; see also 2d Ed. Vol. 1, Sec. 591, p. 461, and Sec. 600, pages 467–468; In Evansich v. Gulf, C. & S. F. RR. Co., 61 Tex. 24–28, we find this statement:

"As all issues of fact must be determined by the testimony of witnesses, it would seem that any fact which bears upon the credit of a witness would be a relevant fact, * * *."

We have examined most carefully each of the authorities cited by appellees in which they contend that such authorities sustain their right to open up and re-try the settlement agreement, and we are of the view that they are not applicable to this particular situation. It is our view that the parties in the present case had the right to have the case tried on its merits without the prejudice that results from the revelation of what a previous jury and judge have done in a former trial. All the facts and circumstances, save and except for prejudice, relating to the settlement agreement, as well as the suit to set it aside, and result of the trial could have no bearing on the ultimate issues in this case, which were the injuries sustained, the disability and the extent of disability.

█ The appellees further contend that appellant waived its objections to the improperly admitted testimony by allowing similar testimony to be admitted, without objection. We are not in accord with this view. Appellees grounded this proposition on the basis that while Mrs. Buschacher was on the witness stand, counsel for appellee propounded her the following question:

"Q. And you do know that this very claims adjuster, Mr. Parker Naylor, who took this statement, is the same man who took the papers in settlement of this claim and paid this lady three hundred dollars, which settlement was set aside in this court because of fraud practied by this very per-

son on Mrs. Yarbrough, do you know that?

A. I don't know anything about the settlement."

It is true that counsel's questions to the witness are in the form of positive statements but the witness replied that she knew nothing about the settlement. Appellees have cited no authorities to support the proposition that the mere asking of a question, when the witness disclaims any knowledge, can constitute similar evidence and effect a waiver. We have found none and overrule this contention.

Appellant's points 27 through 33 inclusive are grouped under one statement and one argument and they deal with the question of assigned error committed by appellees' attorney in the opening argument to the jury. The argument is preserved by Bill of Exception No. 1, and we quote the pertinent parts: Appellees' counsel, in his opening argument, among other things, said:

"I don't blame Mr. Muldrow for objecting, ladies and gentlemen of the jury; he has a right to object; I'm not criticising him at all. I can understand how he might feel a little hot on the seat of his pants in this case. Because it has been an outrage. It has been a conspiracy, if you please, between the Glens Falls Insurance Company, their adjusters, and their lawyers, to beat this woman out of the compensation which, under the law, she was entitled to.

*   *   *   *   *   *

"Mr. Muldrow: Excuse me, now, counsel, I'll object to that, Your Honor, because that is outside the record; it has not been shown; it's highly inflammatory and prejudicial, and we object to the argument on that grounds.

"Mr. Fisher: If the Court please, I don't believe it's out of the record; I believe it's in there big as life.

"The Court: I'll sustain the objection. The jury will disregard it.

"Mr. Muldrow: Now, we move the Court to instruct the jury that they are to disregard it.

"The Court: I have so instructed.

"Mr. Muldrow: We believe that the effects of that argument are so prejudicial that it cannot be cured by instruction and we move the Court to declare a mistrial.

"The Court: The Court overrules the motion for mistrial, and instructs counsel to proceed with the argument."

We think we should say at the outset that there is no evidence that Mr. Muldrow or any member of his firm, or any other attorney, had anything whatsoever to do with the compromise settlement agreement. The argument was not provoked by appellant. The evidence does show that the Glens Falls Insurance Company was the carrier, and when Mrs. Yarbrough made her claim it was referred to Kizer Claims Service, and the record shows that Mr. Naylor, an employee of Kizer Claims, handled all the matters with reference thereto with Mrs. Yarbrough.

The Court qualified the bill of exception, and we quote the pertinent parts of this qualification:

"The Court further finds and certifies that the objection by defendant's counsel set out at the top of page 9 of the transcript of argument above that 'Excuse me, now, counsel, I'll object to that, Your Honor, because that is outside the record; it has not been shown; it's highly inflammatory and prejudicial, and we object to the argument on that grounds.' was directed only to the argument by plaintiffs' counsel: 'It has been a conspiracy, if you please, between the Glens Falls Insurance Company, their adjusters, and their lawyers, to beat this woman

out of the compensation, which, under the law, she was entitled to.' and none other. The Court at once sustained the objection made by defendant's counsel when made and the jury was instructed to disregard such argument and the defendant's motion to declare a mistrial was directed only to such argument and none other and was by the Court overruled."

The Court, in its order overruling defendant's motion for new trial, made the following finding:

"It further appears to the Court that the defendant has neither shown nor attempted to show that any of the matters complained of by the defendant in its amended motion for new trial caused or affected any of the answers made by the jury in its verdict and the Court finds that none of the matters complained of by the defendant in its amended motion for new trial separately or collectively influenced the jury to make any answer or finding it would not otherwise have made."

■ We have considered most carefully this entire record as a whole and the qualifications made by the Trial Court on Appellant's Bill of Exception No. 1, as well as the Court's findings in its order overruling Appellant's Motion for New Trial, and we are of the view that the argument of appellees' counsel could not be cured and was not cured by the instructions of the trial court. We are not in accord with appellees' view that the trial court's conclusions that no harm resulted from the complained of jury arguments set out are binding in law on this court. The trial court's statements and its qualifications with reference to probable harm are conclusions of law and cannot preclude this court from passing on such. We think the rule is that where the arguments are set out in their entirety in the

Bill the harmful effects of such, as well as interpretation of what counsel meant by the argument, are for the appellate court. Texas Employers' Ins. Ass'n. v. Drayton, Tex.Civ.App., 173 S.W.2d 782; Baker v. Vidal, Tex.Civ.App., 363 S.W.2d 158.

■ As we have previously stated, there was no evidence to show that appellant's attorney participated in any manner whatsoever with the compromise settlement agreement referred to and the charge that he participated in a conspiracy with the adjusters and the Glens Falls Insurance Company to beat this woman out of what was justly due her was outside the record, and is so highly prejudicial that it requires us to reverse and remand this cause.

The argument of counsel did not legitimately belong to any issue in the case; it was not based upon any evidence adduced, and it was calculated to inflame the passions and excite the prejudice of the jury; that it did so influence and excite them may well be presumed from the fact that under the record the jury gave Mrs. Yarbrough total and permanent disability. We think the extent of Mrs. Yarbrough's disability under the record was a very close ultimate issue.

The last expressions of our Supreme Court on arguments that are similar in nature to this are found in Howsley & Jacobs v. Kendall, 376 S.W.2d 562. We think the pronouncements made by our Supreme Court in that case are applicable and controlling here and we think the cases cited under paragraphs 3 and 4 of that opinion are applicable to the factual situation here before us. See also, Texas Employers' Ins. Ass'n v. Jones, Tex.Civ.App., 361 S.W.2d 725, n. r. e.; Texas Employers' Ins. Ass'n v. Butler, Tex.Civ.App., 287 S.W.2d 198, n. r. e.

Reversed and remanded.