Joe M. SANDERS, Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE
COMPANY, Appellee.

No. 7877.

Court of Civil Appeals of Texas.

Texarkana.

May 14, 1968.

Rehearing Denied June 11, 1968.

R. W. Fairchild, Vernis Fulmer, Ivy C. Fuselier, Nacogdoches, for appellant.

Richard Grainger, Mike Hatchell, Ramey, Brelsford, Flock, Devereaux & Hutchins, Tyler, for appellee.

FANNING, Justice.

A workmen's compensation case. Appellant Sanders sued appellee insurance company for compensation for permanent total incapacity resulting from an injury allegedly sustained on or about September 8, 1965, in the course of his employment by Nu-

tone, Inc., Woodcarv Division. Trial to a jury resulted in a verdict in which the jury answered "We do Not" to an issue inquiring if they found from a preponderance of the evidence that Joe M. Sanders sustained an injury on or about the 8th day of September, 1965, and "due to solely to other causes" to an issue inquiring if they found from a preponderance of the evidence that the incapacity, if any, of Joe M. Sanders is not now and will not in the future be solely caused by congenital defects, scoliosis, or arthritis, or any combination thereof, existing independent of and having no connection with the alleged injury made the basis of this suit. Judgment was rendered that plaintiff-appellant Sanders take nothing and he has appealed.

Appellant presents 8 points on appeal, all of which complain of jury argument. Appellant's points 1 to 3, inclusive, read as follows:

"First Point

"The error of the trial court in failing and refusing to sustain Appellant's objection to the argument of counsel for Appellee to the jury commenting upon the failure of counsel for plaintiff to put on the witness stand Wayne Allen and Leslie Howard, persons not peculiarly available to Appellant as witnesses.

"Second Point

"The improper and prejudicial conduct of counsel for Appellee in repeatedly commenting, in his argument to the jury, upon the failure of Appellant to put on the witness stand Wayne Allen and Leslie Howard, persons not shown to be peculiarly available to Appellant as witnesses.

"Third Point

"The grossly improper and highly prejudicial conduct of counsel for Appellee during his argument to the jury in telling the jury that he had statements from

Wayne Allen and Leslie Howard that Joe Sanders had not told them of his injury on the day he was hurt and in stating to the jury, after objection had been sustained to the statements he had made, 'here they are, if you want to look at them, the statements from the other witnesses that he didn't put on'."

Before the taking of testimony began, the rule was invoked. Witnesses present in the courtroom and sworn at the instance of appellant were identified as Dorsey Page, Wayne Allen, Benton Daniel, Joe Sanders and Annie B. Sanders.

Appellant Joe Sanders testified to the effect that he got hurt in the course of his employment on September 8, 1965, while lifting a heavy cabinet when he was alone. He testified further to the effect that he continued to work in pain until September 27, 1965, when he went to Dr. Morris, who put him in a hospital in Henderson for twelve days and gave him various treatments for his upper and lower back. After seeing Dr. Morris once or twice more he quit Dr. Morris and went to Dr. Lynch, in Tyler, who treated him regularly since he got out of the Henderson hospital.

He further testified to the effect that no one was around him when he sustained the injury to his back on September 8, 1965, but that he told his fellow employees Dorsey Page, Wayne Allen, and Leslie Howard on the same day that it happened of his injury. Wayne Allen boxed cabinets; Leslie Howard ran a saw, but he did not know what type of work Dorsey Page did. He testified to the effect that he did not tell his employer of his injury until after Dr. Morris put him in the hospital because he needed work and was hoping to get better so he could hold his job.

Appellant Sanders testified in detail as to his claimed injury, his disabilities to work, and the various treatments he received from Dr. Morris and that later he had been treated by Dr. Lynch for a long period and was still under his treatment at the time of the trial. Suffice it to say,

the testimony of appellant Sanders, if given full credence by the jury, would have authorized a verdict in his favor for total and permanent incapacity, or at least a substantial recovery.

Annie Sanders, wife of appellant, as a lay witness, corroborated her husband in many respects. She testified that he came home on September 8, 1965, and told her about getting hurt that day on the job. She also corroborated him as to his being seriously disabled and related his various complaints of pain, his sleeplessness and restlessness at night from back pain, that he was stiff and could not stoop, that he had to take medicine four times per day and that she had bought a back brace for him for his pain, that her husband first went to see Dr. Morris on Sept. 13, 1965, five days after his injury, and that while her husband was in the hospital she told his boss, O. C. Allen, of his injury.

Dorsey Page, a fellow employee placed on the stand by appellant, testified that he worked in the stockroom of his employer and that Sanders' job was to take cabinets from the assembly line and store them in the stockroom, that he would see Sanders frequently every day in the area where Sanders worked, and that he remembered that Joe Sanders, in the early part of September, a few weeks before he quit work, complained to him that he had hurt his back lifting cabinets a few minutes before.

On cross-examination, Page testified that Sanders told him he hurt his back before he went to the hospital and again when he visited Sanders in the hospital.

Page identified and admitted signing a written statement on October 18, 1965, that the first he knew of Sanders hurting his back was when Sanders told him of it in the hospital, he further testified to the effect that he knew Sanders told him before he went to the hospital but could not remember just what day it was, and that one day while he was eating dinner with Sanders, and Sanders was taking medicine all

the time, Sanders said, "Dorsey, I hurt my back," and that they just "laughed it off".

Dr. Lynch testified in detail with respect to his treatment of Sanders' alleged back injuries and his evaluation of same. In his opinion, Sanders was totally and permanently disabled. Suffice it to say, the testimony of Dr. Lynch, if given full credence, would have authorized a verdict for Sanders for total and permanent disability, or a substantial amount of disability.

Defendant-appellee placed three witnesses on the stand. The first witness, Ervin Daugherty, Administrator of Henderson Memorial Hospital, proved up the hospital records of Joe Sanders from Sept. 27 to Oct. 9, 1965, and also proved up the x-rays and x-ray reports in connection therewith. Appellee's second witness was Dr. James McClelland, a radiologist, who testified with reference to the x-rays made of Sanders' back when he was in the Henderson hospital and gave his interpretations and opinions with reference to what the x-rays indicated with reference to Joe Sanders' back. He found scoliosis and congenital defects with reference to Sanders' back and spine, and he further testified to the effect that he did not find in such x-rays any evidence of injury to Sanders. He further testified that he had examined subsequent x-rays of Sanders' back and he found no evidence of injury. Suffice it to say, the testimony of Dr. McClelland, if given full credence, would authorize the verdict of the jury in this case. Testimony of appellee's third and final witness, Dr. Milton Freiberg, of Tyler, Texas, was to the effect that he had examined Sanders on behalf of appellee insurance company and he too found no evidence of injury. Suffice it to say, the testimony of Dr. Freiberg, if given full credence, would authorize the verdict of the jury in this case.

On rebuttal appellant and his wife again gave evidence favorable to appellant's contentions. Also on rebuttal, a Henderson druggist, Mr. Bagley, testified to filling a prescription for Joe Sanders, authorized by Dr. Morris, on Sept. 13, 1965, and also testified as to later prescriptions filled.

Thus the factual background in this case shows a sharp conflict in the evidence as to whether plaintiff received any injuries as alleged and also whether plaintiff's disability, if any, was occasioned by injury or whether same, if any, was due solely to other causes as stated in the issue submitted to the jury.

On the issue as to whether plaintiff received the injury in question and was disabled therefrom as alleged, the credibility of plaintiff-appellant was of a vital nature since he allegedly sustained the injury while working alone. His further testimony that he told three fellow employees about his injury was also of vital importance to his case.

During the trial, and before arguments began, counsel for appellee referred to the failure of appellant to call the witnesses sworn at his request. These instances were as follows:

"Mr. Fulmer: That is all we have at the time, Your Honor, until another witness gets here at 1:30, or 1:00 rather.

"Mr. Grainger: You have got a couple of witnesses waiting outside.

"Mr. Fulmer: Your Honor, we object to that kind of stuff.

"The Court: That's right, don't * * *

"Mr. Grainger: I withdraw it, Your Honor.

"The Court: Don't do that."

Again, immediately after Annie B. Sanders was excused, on appellant's rebuttal, the following occurred:

"Mr. Grainger: What about those * * did you excuse those witnesses?

"Mr. Fulmer: That is all we have, Your Honor. There is some witnesses counsel keeps * * * he can use them. They are here and available.

"Mr. Grainger: They were sworn as your witnesses.

"Mr. Fulmer: If the Court please, that is improper. The Court has already * * *

"The Court: That is improper, Mr. Grainger.

"Mr. Grainger: I will withdraw it.

"The Court: The Court will instruct the jury not to consider it for any purpose."

Counsel for appellee argued to the jury in part as follows:

"Now, there is two classes of evidence. There is direct evidence and there is circumstantial evidence. And, both classes of evidence are entitled to weight and you may use either class of evidence that you want to use. For example, direct evidence, Joe Sanders said he was injured on September 8th. What are the circumstances, and what are the circumstantial evidence. No one saw him get hurt. He didn't ever report it to his employer. His wife called and left word on September 28th, then called back October 4th. Now, do those circumstances sound like someone that was injured on the job, but they wouldn't report it sooner than that. Now he said he told three of the employees, fellow employees. Dorsey Page, Wayne Allen and Leslie Howard that he got hurt, he told them that day, September 8th and they were sitting out here in the courtroom, and they put one of them on the witness stand, Dorsey Page. At first he agreed, 'Oh, yeah, he told me on September the 8th. I knew about it.' Then you know what happened, you remember as well as I do. I brought this to his attention. Statement by Dorsey Page. *And, then he backed down. And that is why Mr. Fulmer didn't put on these other witnesses out here that he had sitting here that were going to swear 'Yes, he told me that he got hurt.'*

Mr. Fulmer: If your Honor please, we are in the same position he was just now, they were available to him and sitting here, he didn't use them either, and he has no right to criticize us unless he criticizes himself.

Mr. Grainger: Your Honor, they were his witnesses under subpoena, by the plaintiff.

The Court: That is all right. Go ahead gentlemen." (Emphasis added)

Appellee's counsel in his argument went out of the record to inform the jury that he had statements from the potential witnesses Wayne Allen and Leslie Howard to the virtual effect that Joe Sanders had not told them about getting hurt as testified by Joe Sanders. During the jury argument of appellee's counsel the following occurred:

"Mr. Grainger: Sitting there in the courtroom and he had them sworn in, you remember that. I guess he was going to have them all swear 'Yes, he told me, he told me he got hurt that day, I knew about it'. *He was going to do that until he found out I had statements from them. That we had gone out there and had statements where they said 'No—*

"Mr. Fulmer: If the Court please, we object to that because it is prejudicial and there is no evidence in here that he had—

"The Court: I sustain, I sustain the objection there, that is out of the evidence and out of the record.

"Mr. Grainger: All right. *Here they are, if you want to look at them—*

"Mr. Fulmer: If the Court please—

"Mr. Grainger: *—the statements from the other witnesses that he didn't put on.*

"Mr. Fulmer: If the Court please.

"The Court: I sustain the objection there Mr. Grainger; that is improper.

"Mr. Fulmer: I would like an instruction that the jury wholly disregard that your Honor.

"The Court: The jury will wholly disregard any statement he makes here about having statements from the other parties who did not appear and testify as a witness." (Emphasis added)

Thereafter, counsel for appellee in his argument made further references to the alleged statements of Allen and Howard which he had previously referred to in his unsworn testimony in oral argument, which additional argument was in part as follows:

"Mr. Grainger: *All right, now the failure of Mr. Fulmer to put those witnesses on the stand, there is a reason for it.* He had them sworn in early in the trial. Remember them sitting out there and he had them sworn in as witnesses for the plaintiff. *But he didn't put them on the stand after that statement came out on Dorsey Page.*

"Anyway, that is the reason he didn't put these other men on because they wouldn't have helped him. Because he saw right from that statement there, that that wasn't the truth. Vernis Fulmer is a man; he is a good lawyer. He goes all over East Texas trying these cases. He is a specialist and he is very very effective in these type cases. He has tried literally hundreds of them. He knows what he is doing. He didn't put those two witnesses on he had sworn out there, because they wouldn't help him. *Because he knew that I had a statement on Dorsey Page, and he didn't want any other statements to come out of some other of these witnesses. He didn't want liars being made out of these witnesses.* I take it you can draw any reasonable conclusion you want to from the fact that he didn't put these other witnesses on he had sworn in. I tell you why he didn't and you can conclude this, too, if you so desire. He didn't put them on because they wouldn't have

helped him. *They wouldn't have backed up Joe Sanders' story, that he told them on the same day that he got hurt.* The truth is Joe Sanders didn't tell anybody.

"Also, not only that, but he told you under oath that 'I told Dorsey Page and I told Leslie Howard and I told Wayne Allen that very date about getting hurt on the job'. Yes, they didn't bring in those other people that would verify that, they tried to bring one, Dorsey Page, yet he had to back down when he was shown the statement that he had given. Joe Sanders didn't tell anyone about it. It just doesn't make common sense does it that if you get an injury on the job you are not going to tell somebody or seek medical aid or tell your boss or tell some fellow employee or wait three or four weeks." (Emphasis added)

No objection was made to the last above quoted argument, but such argument was assigned as error in the motion for new trial. However, as we view it, the damage of giving unsworn testimony relative to the alleged statements of Allen and Howard was already done, even though the trial court had instructed the jury not to consider same. The above quoted and emphasized references of appellee's counsel in oral argument, part of which was also unsworn testimony of a prejudicial nature, further exacerbated the damage done, and the giving of an additional instruction by the trial court would not have removed the harmful and prejudicial effect of the unsworn testimony given by appellee's counsel in oral argument and the inflammatory inferences arising from such argument which were not warranted by the record.

■ Comment on the failure to produce a witness in a civil action is generally improper if the witness is equally available to both parties. 56 Tex.Jur., Trial § 264, p. 64. The circumstance which authorizes such an argument is that the record indicates that the absent witness or evidence is within the control of, or stands in some

special relationship to, the opponent. Mc-Donald, Texas Civil Practice, Vol. 3, 1967, Cumulative Supplement, § 13.06, p. 165.

Our Supreme Court in Tex-Jersey Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062, has announced rules that we believe are applicable and compel a reversal of this cause. After stating the general rule that counsel may comment in argument on the failure of the opposite party to call a witness *employed by him,* the court then held:

1. "The right to comment on the failure to call and use an employee-witness does not grow out of the unavailability of the witness but out of his relationship with the opposite party."

2. "Counsel may [not] undertake to tell the jury what testimony the witness would give. That would clearly be improper as getting unsworn testimony before the jury."

■■ Under the Beck case, supra, we think that the right to comment on a failure to call a witness arises from the circumstance, if made to appear, that the witness stands in such relationship with the party as to render the witness peculiarly or especially available to such party, and within the meaning of this rule, a witness is peculiarly or especially available to a party when he is shown by the record to have had such relationship with the party as would normally predispose him to favor such party and place such party in a better position to obtain material information on the point at issue from the witness. Claybrook v. Acreman, Tex.Civ. App., 373 S.W.2d 287, wr. ref., n. r. e. (1963). (And of course, as stated in the Beck case, counsel may not undertake to tell the jury what testimony the witness would give, as that would be getting unsworn testimony before the jury).

■ It is not the fact that the witness is shown to have, or to have been in a position to acquire, material information on a point at issue, or merely the physical presence or availability of the witness for testimony, that authorizes the right to comment on the failure to produce such testimony. Such facts merely show that such person is a witness and that his testimony is available to either party. The prime question in such matters is whether there is such a relationship which the witness has with a party which makes him peculiarly available to such party so as to authorize comment on such party's failure to produce the testimony of such witness. In Houston, E. & W. T. Ry. Co. v. Boone, 105 Tex. 188, 146 S.W. 533 (1912), it was the fact that the witnesses in question were *employees* of the railroad company which warranted the comment on the failure of the railroad to produce such witnesses. In Whitener v. Traders & General Ins. Co., 155 Tex. 461, 289 S.W.2d 233 (1956), it was the contractual relationship between the insurer and the insured employers, which rendered the insureds more available as witnesses to the insurance company, that warranted comment on the failure of the insurer to produce the insured employers. In the Beck case, supra, it was the fact that the witness Allen was an employee of Tex-Jersey at the time of the occurrence in suit; in Smith v. Broussard, Tex.Civ.App., 257 S.W.2d 125, no writ (1953), it was the close relationship existing by reason of the fact that the witness and the party had (for 14 years) been riding together as members of a car pool; in Claybrook v. Acreman, supra (373 S.W. 2d 287), it was the fact that Claybrook and the witness were close personal friends; in Massey-Ferguson, Inc. v. Easterwood, Tex.Civ.App., 363 S.W.2d 897, wr. ref., n. r. e. (1962), it was the fact that the witness was an employee of a party; in Pelphrey v. Diver, Tex.Civ.App., 348 S.W. 2d 453, wr. ref., n. r. e. (1961), it was the fact that the witness Ruiz was an employee of the party which warranted the comment on the failure to produce such witness.

■ Under the record in this case the potential witnesses Allen and Howard were

employees of the employer who carried workmen's compensation insurance with appellant insurance company. They were not employees of appellant Joe Sanders, they were not under his control in any manner, and there is no evidence that they were friends or close friends of Joe Sanders or that they stood in any sort of special relationship with him that would normally predispose them to favor Joe Sanders over the insurer of their employer to any extent which would place Joe Sanders in a better position to obtain material information on the point at issue. Certainly it can not be said that under the record appellant Joe Sanders stood in any sort of special relationship with the witnesses Allen and Howard which would cause them to be predisposed in his favor as against the insurer of their employer.

We hold that appellant's first, second and third points present reversible error under the record in this case. In addition to the Beck case, supra, and other authorities hereinbefore cited, see Western Fire and Indemnity Company v. Evans, Tex. Civ.App., 368 S.W.2d 114, no writ (1963) and authorities cited therein.

Appellant's fourth and fifth points are as follows:

"Fourth Point

"The grossly improper and highly prejudicial conduct of counsel for Appellee in his argument to the jury in repeatedly charging, when there was no evidence in the record warranting the inference thereof, that counsel for Appellant was guilty of improper, reprehensible and illegal misconduct in victimizing Joe Sanders by paying him not to work, telling the doctor to whom he sent Joe Sanders to run up a big bill, in suborning perjury by telling Dorsey Page, Wayne Allen, and Leslie Howard to swear that Joe M. Sanders told them he got hurt on the same day his injury occurred, and that if Joe Sanders got a verdict most of the money would wind up in the lawyer's hands and Joe Sanders would get little of it.

"Fifth Point

"The grossly improper and highly prejudicial conduct of counsel for Appellee in his argument to the jury in repeatedly charging when there was no evidence in this record warranting the inference thereof, that Dr. Lynch, a witness for Appellant, was guilty of improper, reprehensible, and illegal misconduct, in that he was a party to a conspiracy with the attorney for Appellant to pay Joe Sanders not to work and to running up a big doctor's bill so that they could try to go into Rusk County and get a big sum of money at the hands of a jury, and was in the business in compensation claims and trying to make a racket out of it."

Appellee's counsel made the following arguments to the jury:

" * * * for Joe Sanders to make out a case, he has got to prove that he had an injury on the job, an injury on the job. He remembered no definite situation when he might have hurt it when he went into the hospital. But when he got in the hands of his lawyer, and after he hired his lawyer, and after he got over to Dr. Lynch, oh, there was a definite situation then. It was September 8th, 1965. I submit to you that it is more than a coincidence that just right after he hired his lawyer he quit his family doctor, Dr. Morris, and went to Tyler to see Dr. Lynch. There is more than a coincidence to that. I tell you that there is more than just a coincidence to the fact that he hasn't worked, Joe Sanders hasn't worked since he got his lawyer. Why? He didn't have to. *His lawyer was paying him not to work. He owes him a thousand dollars or more. That is what the situation is* here. And it is high time in this county as a jury that you see what it is. *What is happening here is the lawyer, and the lawyer pays the man not to*

*work, that is the reason he hasn't worked and sends him to a doctor in Tyler and that doctor runs up a big bill of $555.00* of just shots and yet doesn't send a bill to anyone, *because he is in on it, too.*

\*     \*     \*     \*     \*     \*

"Dr. Lynch didn't send a bill to anyone. He testified he never sent a bill to Joe Sanders, over a year and a half, yet he run up a $555.00 bill and what kind of record did he do it on. He did it on the record that I submit to you is quite unusual. Here is the kind of record he used, compensation record, compensation record. Where did accident occur, had employee accident insurance policy, name of company, wages of employee per week, per month. What business is it of a doctor to have that information? *Unless he is in the business in these compensation claims and trying to make a racket out of it.* What business is it of his, wage per week, per month, where did accident occur, name of company. *I submit to you that is what is happening here.*

\*     \*     \*     \*     \*     \*

"What did Dr. Freiberg find? As of his examination in April he found no evidence of any injury; in his opinion the man is not disabled to any degree, he is able to work. Now what does that mean? It means to me, as a reasonable person, I hope I am reasonable, and to you as reasonable people, that *Joe Sanders probably has been victimized here. He has got in the hands of somebody who is paying him some money not to work, who sent him to a doctor who was told to run up a big bill and lets' see if we can't go into Rusk County and get a big sum of money and let's ask the jury to give it to him in a lump sum and not pay it out by the week.* Do you know why they want it in a lump sum? I submit to you if you answer that yes, manifest hardship will result if he doesn't get it in a lump sum. *I*

*will tell you where the money is going to wind up. There is going to be a big pile over there on the lawyer's side and a little pile over there to Joe Sanders.* The best thing that could happen to him would be for it to be paid out weekly, *because he would know, he would know he would get his share then."* (Emphasis added)

No objection was made to the above quoted arguments at the time they were made, but such arguments were assigned as error in appellant's motion for new trial.

■ We think that the above quoted arguments of appellee's counsel were improper and harmfully prejudicial under the record in this case. The evidence that appellant owed his attorney for money advanced to him did not warrant the statement that his attorney *was paying him not to work.* There was no evidence in the record to warrant any charge or inference to the effect that appellant Joe Sanders had probably been victimized and that his counsel was going to get the major portion of any money which might be awarded to Joe Sanders by the jury. We also think that the evidence in the case did not warrant any charge or insinuation to the effect that appellant's doctor *was making a racket out of compensation claims,* and was *in on* it too, nor did the evidence warrant any charge or inference to the effect that appellant's counsel and appellant's doctor were *in on* any sort of conspiracy or racket with respect to the compensation claim of Joe Sanders. Furthermore, the oral argument of appellee's counsel to the jury to the effect that appellant's attorney *was paying appellant not to work* and had sent appellant to a doctor *who was told to run up a big bill,* etc., was not only unwarranted by the evidence, but was outside of the record and unsworn testimony of appellee's counsel in oral argument.

We think the arguments complained of by appellant's fourth and fifth points above referred to combined "both the evils of

introducing purported evidence not in the record and appeals to passion and prejudice". Houseman v. Decuir, 155 Tex. 127, 283 S.W.2d 732 (1955).

We are not unmindful of the holding in Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054 (1940), where the Supreme Court held great latitude is allowed counsel in discussing the facts and issues but in so holding the court said, "[B]ut such latitude extends only to the facts and issues raised by the evidence in the case".

We hold that appellant's 4th and 5th points present reversible error under the record in this case. In this connection see the following authorities: Howsley & Jacobs v. Kendall, Tex.1964, 376 S.W.2d 562; Southern Pacific Company v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956); Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115 (1954); Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856 (1954); Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197 (1951); Western Fire & Indemnity Co. v. Evans, Tex.Civ.App., 368 S.W.2d 114, no writ (1963); Glens Falls Ins. Co. v. Yarborough, Tex.Civ.App., 396 S.W.2d 200, wr. ref., n. r. e., (1965); Cross v. Houston Belt & Terminal Ry. Co., Tex.Civ.App., 351 S.W.2d 84, 96 A.L.R.2d 1, wr. ref., n. r. e. (1967).

After carefully reviewing the entire record it is our view that the arguments complained of by appellant in his points 1 to 5 inclusive, present reversible error, in view of the fact that the issues of injury and disability by reason of injury were sharply contested, and that the improper and prejudicial arguments above referred to amounted to such a denial of the rights of appellant as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case.

Appellant's sixth and seventh points read as follows:

"Sixth Point

"The improper and prejudicial conduct of counsel for Appellee in his argument to the jury in appealing to the jury, when there was no evidence to such effect, to credit the testimony of Appellee's medical witness, Dr. McClelland, by informing the jury that such witness was a 'home town boy' who had played and was quarterback on the 'football team here at Henderson.'

"Seventh Point

"The error of the trial court in overruling Appellant's objection to the argument of Appellee's counsel to the jury that: 'My goodness all of us as we get old, all of us have some back trouble, to some degree or other.'"

■■ The argument complained of by appellant in his sixth point was improper because it was unsworn testimony outside of the record and was an appeal to favorably credit the testimony of Dr. McClelland, "a home town boy" who had played quarterback on the "football team here in Henderson". However, the trial court sustained objection to this argument and instructed the jury not to consider same. While this argument was improper and prejudicial we think that this argument, standing alone, does not present reversible error under the record in this case. We also think that the argument complained of by appellant in his seventh point was not of sufficient harm to present reversible error.

Appellant by his eighth point contends to the effect that the cumulative effect of the arguments complained of constitutes reversible error. We think the arguments complained of in appellant's points 1 to 5, inclusive, were each improper. We further hold that the aggregate and cumulative effect of the arguments complained of in appellant's points 1 to 5, inclusive, when considered in the light of the whole record in this case, were in law reasonably calcu-

**526**

lated to cause and probably did cause the rendition of an improper judgment in this case, and that the same presents reversible error. See the following authorities: Smerke v. Office Equipment Co., 138 Tex. 236, 158 S.W.2d 302 (1941); Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115 (1951); Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120 (1956).

The judgment of the trial court is reversed and the cause is remanded for a new trial.