Mrs. Ewell Dean Coward **KENNELLEY** et al., Appellants,

v.

**TRAVELERS INSURANCE COMPANY,** Appellee.

No. 17868.

United States Court of Appeals Fifth Circuit.

Jan. 8, 1960.

Rehearing Denied March 3, 1960.

John J. Watts, Odessa, Tex., for appellants.

Thornton Hardie, Jr., Midland, Tex., for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

Mrs. Ewell Dean Coward Kennelley, widow, along with the children and the parents of Elbert Lee Coward, instituted this action seeking to recover benefits provided by the Workmen's Compensation Laws of Texas for the death of said Elbert Lee Coward, an employee of Rowan Drilling Company. He was found dead on his employer's premises near Odessa, Texas. From a judgment rendered upon jury verdict for the defendant-appellee, insurance carrier of said drilling company, this appeal is prosecuted.

The appellants assert that the court below committed numerous errors in the conduct of the trial and in charging the jury. We find merit only in the specifications charging that the district court erred in restricting too closely the examination of appellants' witnesses, particularly as respects hypothetical questions, so that appellants were not able fully to develop their case before the jury. There were no eyewitnesses, and the facts attending Coward's death had to be established by circumstantial evidence. It is the duty of the trial court under such circumstances to allow the parties a reasonably wide latitude in getting before the jury the facts and circumstances upon which they rely.

July 25, 1955 was a typically hot day in western Texas with temperatures ranging between 95 and 100 degrees at mid-morning. On this day Coward arrived at work shortly before 8:00 a. m. His duties as an engineman required that he inspect and service the various engines used in connection with his em-

ployer's drilling operations. At approximately 9:00 a. m. he left the drilling rig, generally the focal point of his activities, and proceeded to a location a quarter of a mile distant, there to inspect and service an engine powering a water well pump. Sometimes he would check the oil while the engine was running; at others he would stop it, in which event he would be required to crank it back into operation. About an hour after he had left the drilling rig Coward was discovered dead lying on his back about six feet in front of the engine, which was running at the time. The engine would cut off automatically when the water in the radiator became heated beyond 180 degrees. Under the circumstances the engine and its housing were necessarily quite hot.

Dr. Martha Madsen, a pathologist, performed an autopsy upon deceased at the request of the insurance company and the drilling company and upon the acquiescence of the appellants. The action of the trial court in ruling out some testimony appellants sought to elicit from her when they placed her on the stand is illustrative of the rulings appellants argue as error. The autopsy report made by her was introduced in evidence by the appellants without objection, and it and the oral testimony elicited from her presented a rather full picture of the condition of deceased's body and of her findings.

She testified that she found evidence of acute excoriation from burns on the front portions of the deceased's arms and thighs. Examination of the heart disclosed evidence of atherosclerosis or hardening of the coronary arteries and an acute thrombus of the descending branch of the left coronary. Further internal examination revealed an acute rupture of the spleen and a small rupture of the pericardial sac. It was Dr. Madsen's opinion that the rupture of the spleen and the pericardial sac would result only from a heavy blow or a fall forward of great force; that a fall against a steel engine of the type being serviced by Coward at the time of his death would be calculated to produce the injuries found by her, and that a fall backwards on the ground would not be calculated to produce the injuries or to be of sufficient force to cause the ruptures.

During the course of her direct examination by appellants she was asked a hypothetical question embracing the facts to which she and other witnesses had testified, followed by a request for her opinion whether the condition of the heart and arteries would have produced death without the ruptures.[1]

We think that the court was mistaken in this statement and that the use of the words "severe trauma" by appellants' attorney was amply justified from the facts in evidence, and that it was error to sustain appellee's objection and exclude evidence on this vital point. The exclusion of expert and opinion evidence is reversible error where such exclusion is prejudicial to the substantial interests of the party offering it.[2] The substantial rights of the party are generally held to be affected where the excluded evidence relates to a material point.[3]

Under the established law of Texas this inquiry was of the essence of appellants' case. In 10 Texas Jurisprudence, "Workmen's Compensation," 1959 Supplement, P. P. p. 41, it is stated:

"Where an injury is contributed to by some factor peculiar to the em-

---

1. "* * * do you believe that it is probable that the coronary condition which you found the man to have had would have resulted in his death when he ruptured his spleen?"

Appellee's attorney insisted, in objecting to the question, that the use by appellants' attorney of the term "severe trauma" was not justified by the evidence. The court accepted that view, stating:
"Up to this point there is no evidence of high trauma, as you expressed it, and the objection to that question in that form is sustained."

2. 3 Am.Jur., Appeal and Error, § 1036, p. 592.

3. Ib. § 1032, p. 589.

ployment it arises out of the employment even though the fall has its origin solely in some idiopathy of the employee."

This principle was well stated in Garcia v. Texas Indemnity Co., 1948, 146 Tex. 413, 209 S.W.2d 333, 336, where a store employee was fatally injured while suffering an epileptic seizure during which he fell, striking his head against a steel edging installed to protect posts near a loading ramp from heavy trucks. There the Supreme Court of Texas, in sustaining an award of compensation, stated:

"If, except for the employment, the fall though due to a cause not related to the employment, would not have carried with it the consequences it did, then the causal connection is established between injury and employment, and the accidental injury arose out of the employment."

Again, in American General Insurance Co. v. Barrett, 1957, 300 S.W.2d 358, 363, the Court of Civil Appeals of Texas approved the award of compensation to a worker suffering from heat prostration who lost consciousness and fell, fracturing his skull on a hard-surfaced road on his employer's premises and later died because of a subarachnoid hemorrhage. The court stated: "In the instant case it can be said the hard-surfaced road was an instrumentality essential to the work of the employer and falling against it was a hazard to which Barrett was exposed because of his employment and injury and death came to him because he was then working in the course of his employment.[4]"

Both the Texas Courts and this Court have consistently held that an expert opinion in response to a hypothetical question based upon the facts does not invade the province of the jury but, on the other hand, serves as an aid to the jury in determining the ultimate facts.[5]

There can be no doubt that, in this case, the line of testimony of which the foregoing is illustrative was of crucial importance. The deceased had fallen as the result of an acute heart attack. There was proof from which the jury could well have found that he fell forward onto the hot engine before he fell backward onto the ground where he was found. Appellants were endeavoring to get evidence before the jury that the heart condition and the fall backwards would probably not have resulted in his death without the ruptures of the spleen and the pericardial sac. It was of great importance that the appellants have this testimony from the person who knew more about the circumstances attending the death than anyone else. Coupled with the testimony tending to establish that the ruptures were produced by violent contact with the engine rather than by a backwards fall onto the ground, this proof would have greatly strengthened the appellants' case before the jury. Its exclusion was, in our opinion, prejudicial error.

No good purpose will be served by analyzing other rulings of the court in its rejection of proffered testimony. In order that there may be another trial in consonance with the views here expressed, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.

---

4. And see also Texas Employers Insurance Co. v. Smith, Tex.Civ.App.1950, 235 S.W.2d 234, a case involving death to an employee from a coronary occlusion.

5. Texas Employers' Insurance Association v. Wright, Tex.Civ.App.1938, 118 S.W.2d 433, 441; Texas Employers' Insurance Association v. Lovett, 1929, 19 S.W.2d 397; Decatur Cotton Seed Oil Co. v. Belew, Tex.Civ.App.1915, 178 S.W. 607; Fort Worth and Denver Railway Co. v. Janski, 5 Cir., 1955, 223 F.2d 704; Carroll v. Magnolia Petroleum Co., 5 Cir., 1955, 223 F.2d 657. See also 58 Am. Jur., Witnesses, § 852, p. 481.