Bevie F. BIGGERS, Trustee, et al., Appellants,

v.

The STATE of Texas, Appellee.

No. 15988.

Court of Civil Appeals of Texas.

Dallas.

May 4, 1962.

Rehearing Denied June 8, 1962.

McKool & McKool and Carl Broyles, Dallas, for appellants.

Will Wilson, Atty. Gen., William R. Hemphill and Morgan Nesbitt, Austin, for appellee.

Locke, Purnell, Boren, Laney & Neely, Dallas, amicus curiæ.

YOUNG, Justice.

This is a condemnation suit brought by the State against appellants for the taking of 88,601 sq. ft. of business land across U. S. Highway 67 from Big Town Shopping Center for the building of an overpass at that Highway and Shiloh Road in Dallas County. Appellee's right, power and authority to condemn the land not being questioned, the case was submitted to the jury on three issues, with judgment rendered for $20,000 on their answers, of which the appellants complain as wholly inadequate and insufficient.

The landowners' principal complaint in motion for new trial centers upon the court's refusal to permit Leonard M. Cowley, a real estate appraiser, to testify that he had been employed by condemnor (State of Texas) to make an appraisal of the subject property; that he had made such appraisal and had been paid therefor; refusing also to permit any questioning as to such appraisal; nor concerning his own expert opinion of the market value on date of taking, to-wit: July 8, 1958.

Cowley had not been called on by condemnor as a witness and was represented in this proceeding by his own attorney, filing brief amicus curiae.

We gather from the briefs of the parties that after both sides had presented their testimony in chief on values, and after appellants had presented one witness in rebuttal, they called Mr. Cowley to the stand for further rebuttal. He was allowed to state his name to court and jury, that he was a land appraiser in Dallas County, fairly familiar with the location of the property, objections being sustained to any further questions as to his having been employed by the State to make an appraisal thereof or to amount of that appraisal. Appellants were thereafter denied the right to develop any anticipated testimony of the witness Cowley by formal Bill of Exceptions; the stated purpose of the Bill being to show "(1) that Mr. Cowley was employed by the State Highway Department; (2) that he did make an appraisal for the State Highway Department; (3) that he was paid by the State Highway Department for making the appraisal; (4) that he made an appraisal that varies somewhat probably * * * from the actions in this * * * from $25,000.00 or $30,-000.00 upward to $60,000.00."

In substance, the jury answers were (1) that the market value of the strip of land condemned by the State at time it was condemned, considered as severed property, was $20,000; (2) that the market value of defendants' tract of land exclusive of the strip condemned, immediately before the strip was taken, was $425,000; (3) that excluding increase or decrease in values by reason of injuries received by defendants in common with the community generally and not peculiar to them and connected with their ownership, and taking into consideration the uses to which the strip condemned is to be subjected, the market value of the remainder of defendants' tract of land immediately after the taking of the strip was $425,000.

Appellants' main ground of error is presented in their point two; complaining of the court's refusal "to permit Leonard M. Cowley, a real estate appraiser, to testify during the trial as to the market value on the date of taking of the strip of land condemned in excess of $30,000, and to testify as to the market value of the remainder of appellants' tract of land, excluding the strip condemned, immediately before the condemnation and immediately after the condemnation since such testimony is not privileged and not the subject of any immunity." This was answered by appellee in counterpoints eight and seven as follows: (8) "No error on the part of the trial court is shown because an expert valuation witness cannot be compelled to testify as to an opinion of value which is based on an examination of the property to be valued made during and pursuant to his engagement as an appraiser by the party adverse to the party offering the testimony." (7) "Even in the event that it were error to exclude any of the testimony of witness Cowley, such exclusion would be harmless because the issues of value were thoroughly developed through the testimony of other witnesses." The particular witness Cowley was also in the attitude of refusing to testify, the reason thereof being fairly stated in the following comment of his own counsel, Mr. Purnell, viz.: "My position is this, the testimony itself as to the appraisal is inadmissible, not only before the jury, it cannot be extracted from the appraiser, even on a Bill, under the rule regarding both the rule which the Court mentioned against discovery, and the further reason that the work product of the professional appraiser cannot be extracted from him, against his will, * * * unless he has agreed to give that work product to the person seeking it, * * * because it is his sole livelihood."

We are chiefly concerned with state of the record at time appellants offered the testimony of their witness Cowley. They, having the burden of proof, first presented Russell E. Shutt, a qualified appraiser, familiar with the subject land, who expressed an opinion of value of the strip condemned at $66,606.60; of the remaining land before the condemnation at $528,500 and immediately thereafter at $468,500. Larry Klindworth, likewise an experienced appraiser, valued the property condemned at $69,450; the remainder immediately before the taking at $534,000 and immediately after the taking at $471,000, appellants then resting. Appellee then presented expert appraisal witnesses Joseph R. Smith, III, and Howard W. Dunham, Sr., the former expressing an opinion of $16,000 as market value of the land condemned, that of the remaining property before the condemnation at $336,000 and after the taking at $336,000. The latter (Dunham's) opinion of the value of the land condemned was $19,300; of the remaining property before condemnation at $374,900 and after the taking in the same amount. Appellants' first rebuttal witness was Roy Eastus who valued the strip condemned at $61,330.55, the remainder before the taking at $492,600 and after the taking at $438,200. Then came the call by appellants of the witness Cowley for the purpose of showing (as already stated) "(1) that Mr. Cowley was employed by the State Highway Department; (2) that he did make an appraisal for the State Highway Department; (3) that he was paid by the State Highway Department for making the appraisal; (4) that he made an appraisal that varies somewhat probably * * * from the actions in this case * * * from $25,000.00 or $30,000.00 upward to $60,000.00."

We now recur to appellants' point two above quoted. The objections of appellee and attorney for the witness were to effect that the appraisal sheets of Cowley, made while employed by the State but not used, were otherwise his personal property which he could not be made to produce at instance of the opposing party unless voluntarily; and this though appellants had offered to pay the amount of his charges in

this connection, such is the rule of property in some other jurisdictions; notably in Pennsylvania. See Pennsylvania Company for Insurances on Lives and Granting Annuities v. City of Philadelphia, 262 Pa. 439, 105 A. 630, 2 A.L.R. 1573. There, in an eminent domain case, two real estate men were called to testify for the party from whom they had not made an appraisal. Objection was made to their testifying because of their employment and report to the opposing party. The court in sustaining the objections, distinguished between the right of the State or the United States in vital public matters and those of a private litigant; and also distinguished between compelling testimony as to "facts" and the giving of professional expert opinion; holding as follows: "The process of the courts may always be invoked to require witnesses to appear and testify to any facts within their knowledge; but no private litigant has a right to ask them to go beyond that. The state or the United States may call upon her citizens to testify as experts in matters affecting the common weal, but that is because of the duty which the citizen owes to his government, and is an exercise of its sovereign power. * * * *But the private litigant has no more right to compel a citizen to give up the product of his brain than he has to compel the giving up of material things. In each case it is a matter of bargain, which, as ever, it takes two to make, and to make unconstrained.*" (Emphasis ours.)

██ Texas is without statutory privilege for professional men, the rule of privileged communications not extending to communications with bankers, partner to partner, clergymen and confessor, or physician and patient. 44 Tex.Jur. p. 1074. As to the latter class for example in Caddo Grocery & Ice v. Carpenter, Tex.Civ.App., 285 S.W. 2d 470 it was held that a defendant was entitled to the testimony of plaintiff's medical witness and could have secured the doctor's testimony by the means provided by law; reiterating that "the doctrine of privileged communications does not extend to physician and patient." The rule is logically inclusive of real estate appraiser and client.

██ Relevant to appellee's counterpoint eight and consistent with the Texas decisions on privileged communications, we think that an expert valuation witness can indeed be compelled to testify as to an opinion of value which is based on an examination of the property to be valued, made during and pursuant to his engagement as an appraiser by the party adverse to the one offering the testimony. Analogous here in principle is the early case of Summers v. State (5 Tex.Ct.App. 365); 32 Am.Rep. p. 573. There a Doctor Spohn had conducted a post-mortem examination upon one Martinez but on the witness stand had declined to state the cause of the death on ground that "my knowledge was obtained by professional skill and from the deductions of experience which I consider my own property and which the county of Nueces has persistently refused to pay for.' It was held that while a medical expert could not be compelled to make a post-mortem examination unless paid for it, but an examination having already been made by him, that he should be compelled to disclose the result of that examination.

Squarely in support of appellants' position here is City of Houston v. Autrey et al., 351 S.W.2d 948, n. r. e., where the Waco Court affirmed the admission of testimony similarly offered. There, in a condemnation suit, appellant—City—had claimed error of the trial court in permitting the landowner to offer and adduce testimony from a professional appraiser the City had employed to evaluate damages resulting from a taking. Although it had engaged and paid him to appraise the value of the property taken and damage to the remainder, the City did not call him to appear as a witness. Landowner then called him and elicited testimony on what land on the particular street had sold for in that area per square foot and also as to value of damages to the owner's land not taken; no in-

quiry being made however of his opinion as to market value of the tract taken. In its opinion of affirmance, the Court, through Associate Justice Wilson, held:

"The City urges that if the court's action in permitting this witness to testify is permitted to stand it will penalize and prevent efficient and diligent preparation for trial; that since it paid for the services of the witness in making the evaluation, appellees' calling him was 'a taking of appellant's valuable property rights' which it had paid for without its consent. As we understand it, the City contends the information and opinion of this witness 'was testimony that could have been obtained by appellees in a free and open competitive market from one of the many professional appraisers within the county'. In short, the position is that the testimony of the witness it voluntarily employed to ascertain the facts was damaging before the jury, and appellant having paid for it, should be suppressed.

"We cannot subscribe to the view that the testimony of a paid witness is property, or that payment for his services gives any exclusive proprietary right. *To so hold would be judicial smothering of the search for truth.* A logical sequent of the City's position, as appellee suggests, would be that a condemnor in some areas might be able to employ every qualified appraiser, use those whose testimony is considered favorable, and effectively prevent the owner from using any other as a witness." (Emphasis ours.)

■ But appellee argues that if such excluded testimony constituted error same was harmless, because the issue of value had already been thoroughly developed through the testimony of other witnesses, citing 24 Tex.Jur.2d p. 50. In the same text it is stated that "Reversible error may be committed in excluding proper opinion evidence relevant to the issues if the party seeking to elicit the opinion can show that he was injured or prejudiced thereby." This case was hotly contested on the single issue of market values. In view of the jury verdict, we cannot say that there was no probable injury to appellants in the exclusion of the testimony of Cowley. "The exclusion of expert and opinion evidence is reversible error where such exclusion is prejudicial to the substantial interests of the party offering it. The substantial rights of the party are generally held to be affetced where the excluded evidence relates to a material point." Kennelley v. Travelers Insurance Company, 5 Cir., 273 F.2d 479, 481.

The conclusions above reached render unnecessary a discussion of further points or counterpoints.

Judgment under review is reversed and cause remanded to the trial court.

Reversed and remanded.