**HOUSTON LIGHTING & POWER COMPANY, Appellant,**

v.

**Howard BOYLES et al., Appellees.**

**No. 7113.**

Court of Civil Appeals of Texas, Beaumont.

April 4, 1970.

Rehearing Denied June 4, 1970.

Second Rehearing Denied June 25, 1970.

Stephenson, J., dissented from denial of motion for rehearing and filed opinion.

Keith, J., concurred in denial of motion for rehearing and filed opinion.

Baker, Botts, Shepherd & Coates, Houston, for appellant.

Reynolds, White, Allen & Cook, Houston, for appellees.

PARKER, Chief Justice.

The appeal is from a judgment based upon a jury verdict awarding appellees the gross sum of $225,152.50 for the taking of two easements across certain property of appellees and the damage to the remainder. The first easement was over and across a tract of land containing 202.1 acres, such being a strip 80 feet in width running the entire length of the property and contained 16.603 acres. The second tract was 200 feet by 350 feet containing 1.607 acres out of the larger tract. On the first or strip easement, appellant condemned an easement for its poles, wires, appurtenances, etc.; while on the second tract, the land was to be used as an electrical power sub-station.

Appellant comes forward with five "areas of complaint," each supported by appropriate points of error. Since appellees follow this method of presentation in their brief, we adopt the same procedure, rather than considering separately each point of error.

The first area of complaint is addressed to the action of the trial court in permitting evidence relating to the desirability of placing transmission lines underground as opposed to their placement upon overhead steel towers. At the time of trial, long after the taking, the steel towers had been erected upon tract one, and the lines had not been placed underground. The thrust of the argument is that appellant, as a corporation to whom the power of eminent domain had been delegated by the State, was under no legal or moral obligation to place the lines underground; consequently, so it is contended, the cross-examination of its witness, Chetham-Strode, with reference to the possibility of placing such lines underground "was to enflame the minds of the jury and to lead the jury to believe that the Company was not using due care and caution in the manner and method of design and construction of their lines."

We agree with appellant in its contention that once the power of eminent domain has been delegated to a corporation, the exercise of that power (unless arbitrary, capricious or mixed with fraud) is not subject to judicial scrutiny. Texas Electric Service Co. v. Linebery, 327 S.W. 2d 657, 663 (El Paso Tex.Civ.App., 1959, error ref., n. r. e.); Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 88 (1940); Vilbig v. Housing Authority of City of Dallas, 287 S.W.2d 323, 327 (Dallas Tex.Civ.App., 1955, error ref., n. r. e.); West v. Whitehead, 238 S.W. 976, 978 (San Antonio Tex. Civ.App., 1922, error ref.); Luby v. City of Dallas, 396 S.W.2d 192, 197 (Dallas Tex.Civ.App., 1965, error ref., n. r. e.).

The cross-examination of appellant's witness, Chetham-Strode, came after similar testimony had been elicited without objection from appellant's right-of-way agent, Graham. After many pages of testimony from Chetham-Strode, appellant made a motion for mistrial based upon the occurrence, and an alternative motion to instruct the jury to disregard such testimony. The Court denied the motion for mistrial but instructed the jury at that time, not to

consider such testimony. In addition, there was a special instruction included in the charge directing the jury "not to consider any testimony relating to whether or not transmission lines may or should be placed underground."

▮ The testimony elicited on cross-examination was pertinent, if admissible, only upon the question of damage to the remainder. In such a situation, it has been said that "almost any fact that bears upon the increase or decrease in the market values before, and after the establishment of the public facility, are admissible." Rayburn, Texas Law of Condemnation, § 124, p. 396. And, while evidence of unsightliness, potential danger, interference with radio and television reception, etc., was proper, we are not persuaded that the particular cross-examination was proper. The appellees, through this cross-examination, succeeded in implanting in the jury's minds the fact that appellant had chosen the cheap way of constructing its improvements across appellees' lands; that in so doing it the cheap way, appellant had caused damage to the appellees for which they should be compensated, possibly to the extent of the difference in cost of the buried versus exposed lines. This was improper; and, the trial court eventually agreed with appellant and granted the motion instructing the jury to disregard the testimony and give it no consideration.

▮ Appellees, whose land was being taken for the benefit of the public in providing the distribution of needed electricity, had no voice in the type of improvement the electric company would erect on the easement taken. They were entitled to be fully compensated, a fact which no one disputes, but they were not entitled to direct the manner in which the power company went about the discharge of its lawful occupation. It was for appellant, clothed with the power of the sovereign to condemn the land, to choose the manner in which the electricity would be distributed, and it was not appellees' choice. In our opinion,

it was error to permit the evidence to be introduced.

▮ In so holding, however, we do not reach the end result sought by appellant—a reversal of the case. In this aspect, our decision is controlled by Bridges v. City of Richardson, 163 Tex. 292, 354 S.W.2d 366, 368 (1962), wherein the Court laid down this rule:

"If evidence is erroneously admitted, error exists; if its admission was not reasonably calculated to cause and probably did not cause an improper judgment, it is still error but is not *reversible* error. The question of whether a particular error is reversible error depends upon whether it was reasonably calculated to cause and probably did cause an improper judgment and presupposes the existence of error. Aultman v. Dallas Ry. & Term. Co., 152 Tex. 509, 260 S.W.2d 596." (Emphasis by the Court.)

Thus, recognizing the error, we turn to a consideration of the record to determine if the cross-examination was reversible error under Bridges.

▮ Appellant, accepting its burden of showing reversible error, says that "the jury awarded over four times the amount of money that its witness Tom Edmonds testified that the land taken was worth and almost three times as much as its witness Hurlock testified the land was worth." We find that the explanation is true to the record but remain unconvinced. By the same token, the jury did not find that the land taken was worth nearly as much as appellees' witnesses believed. The short answer to the contention so advanced is that the jury was not required to believe *any* of the expert witnesses—those on either side of the controversy. As was said by Chief Justice Alexander in Maryland Casualty Co. v. Hearks, 144 Tex. 317, 190 S.W.2d 62, 64 (1945):

"Jurors in weighing the evidence before them have a right to use their common

knowledge and experience in life. If the opinions of the experts as given in the evidence do not comport with the jurors' ideas of sound logic, the jurors have a right to say so. Otherwise there could not be a free discussion of the evidence in the jury room. [Citations omitted.]

The jury's award is well within the range of the expert testimony and we are not convinced that the jurors disobeyed the double instruction of the Court, considered the inadmissible testimony, and thereby brought about the rendition of an improper judgment. The first area of complaint is overruled.

▮ The second area of complaint relates to the refusal of the trial judge to require the appellees' only appraisal witness to produce a copy of his official appraisal report which he had prepared for appellees' counsel on the property in question. Appellees offered as their expert one George Reed who was extensively cross-examined by appellant's counsel. Finally, counsel asked if he had prepared a written report of his appraisal for appellees' counsel and was answered affirmatively, but Reed stated that he did not have it with him in court. Being asked if there was anything different in the report and his testimony, appellees' objection was sustained and the witness was not required to answer. Upon the bill of exception, appellant developed that in actuality there had been three such appraisal reports prepared, but the witness contended that there was nothing in any report which was not contained in his testimony. Under the record as it was then made and now stands, neither appellant nor this court is in position to dispute the answer of the witness as to the differences, if any, in his testimony and his reports.

In closing the bill of exception, counsel for appellant demanded the report be produced, to which the court replied:

"He has already testified that he has given everything today that he had in his report, isn't that what you said?"

The witness answered the Court by saying: "Yes, sir. Everything I have discussed and talked about in the report."

Insofar as we are aware, the civil courts of Texas have not adopted the so-called Jencks Rule [Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957); or the Jencks Act, 18 U.S.C.A. § 3500. See also: Gaskin v. State, 172 Tex. Cr.R. 7, 353 S.W.2d 467, 469 (Tex.Crim. App., 1961)].

Appellants' reliance upon Dobbins v. Gardner, 377 S.W.2d 665 (Houston Tex. Civ.App., 1964, error ref., n. r. e.); Biggers v. State, 358 S.W.2d 188, 189, 191 (Dallas Tex.Civ.App., 1962) error refused, no reversible error 360 S.W.2d 516 (Tex.Sup., 1962); Winters v. Winters, 282 S.W.2d 749 (Amarillo Tex.Civ.App., 1955, no writ); Wooten v. State, 348 S.W.2d 281 (Austin Tex.Civ.App., 1961, error ref., n. r. e.), is misplaced. We have examined each of these cases very carefully and find that each is readily distinguishable from the situation facing us.

Appellant does not contend that it would have been entitled to see the appraisal reports under discovery process, for that is foreclosed by Shirley v. Dalby, 384 S.W.2d 362, 368-369 (Texarkana Tex.Civ.App., 1964, error ref., n. r. e.). Cf. Ex Parte Hanlon, 406 S.W.2d 204, 207 (Tex.Sup., 1966), citing Shirley, supra. Appellant does not cite any authority for its bold assertion that simply because a witness admits that he has made a written report concerning the subject of his testimony, he may be required to produce it for cross-examination. Indeed, in Manley v. Wilson, 313 S.W.2d 339, 343 (Beaumont Tex.Civ.App., 1958, error ref., n. r. e.) this Court disposed of a similar contention saying:

"Doctor Watson purported to testify from his then present, independent, though refreshed recollection; and he did not have recourse to his file while testifying. In accord with what appears to be the weight of authority we hold that in the circumstances the defendant

was not entitled as a matter of right to have the file produced in court and submitted for examination by him or his counsel. See 98 C.J.S. Witnesses § 362, p. 101; Texas Law of Evidence, McCormick and Ray, 2d Ed., sec. 553, Vol. 1, p. 449; Hamilton v. Rice, 15 Tex. 382, 386; Lennon v. United States, 8 Cir., 20 F.2d 490."

The points of error making up the second area of complaint are overruled.

The third area of complaint relates to the refusal of the trial court to permit appellant to obtain from one of the appellees' witnesses the number and names of other appraisers, if any, who may have been employed by appellees to appraise the property involved in the suit. George Reed was appellees' expert witness, and upon cross-examination was asked the simple question which has precipitated this controversy:

"Q. Do you know the names of any other appraisers on behalf of the Boyles' family that looked at this property?"

Appellees' counsel then reiterated a prior objection, "I believe it is my privilege. They are calling for my work product and they are not entitled to a description by name of who else might have made an appraisal of this property."

The jury being withdrawn, the question was repeated for the purposes of the bill of exception, and after a long colloquy between counsel and the Court, the objection was sustained. Then appellant asked if there had been more than two appraisers who had seen the property for the condemnees, and again the objection was sustained.

■ We sustain points five, six, and seven (making up the third area of complaint), finding that the trial court committed reversible error for the reasons now

to be stated. We have no quarrel with the authorities cited by appellees, insofar as they relate to discovery of the work product of the lawyer. Indeed, as the late Justice Norvell observed in Hanlon, supra (406 S.W.2d at p. 207):

"The provisos in Rule 186a seem to be peculiar to the Texas practice. Cf. Ex Parte Ladon, 160 Tex. 7, 325 S.W.2d 121 (1959) relating to Rule 167. It could well be that the giving of the information requested of Hanlon should not as a matter of abstract justice be frustrated by operation of the provisions of Rule 186a, but the wording of the pertinent provisions leaves little or no room for the exercise of discretion by a trial judge Shirley v. Dalby, 384 S.W.2d 362 (Tex. Civ.App., 1964, ref. n. r. e.), and the fact remains that the wording of the provisos is unambiguous and covers the exact situation we have before us. * * *"

■ We are not dealing with discovery such as was discussed in Shirley, cited in Hanlon, supra. We are dealing with the substantive rights of a litigant in the courtroom with large financial stakes at issue. Appellant had a right to inquire of the witness as to the names of other expert appraisers who had appraised the property on behalf of the landowners. Perhaps, as the Court commented, "I don't think this witness is in a position to know. I don't think this witness can answer that question as to how many appraisers have been on the case"; but, that was for the witness to say, not the judge. For all that appears, there may have been a called meeting of the Harris County Appraisers Society upon the premises, all hired by appellees to appraise the property on behalf of the Boyles' interests.[1] Or, the witness may have had no knowledge on the subject; but, again we have no answer from the witness.

1. See Justice Wilson's pungent comment in City of Houston v. Autrey, 351 S.W.2d 948, 949 (Waco Tex.Civ.App., 1961, error ref., n. r. e.) as to possibility of a party "cornering the market" on qualified appraisers.

Clearly, appellant had a right to call as its witness any person qualified to give testimony, regardless of the fact that appellees may have hired him previously to appraise the property. City of Houston v. Autrey, supra; Biggers v. State, supra; City of Austin v. Capitol Livestock Auction Co., 434 S.W.2d 423, 436 (Austin Tex.Civ.App., 1968), modified and affirmed on other grounds, 453 S.W. 2d 461; Cf. Lehnhard v. Moore, 401 S.W.2d 232, 235 (Tex.Sup.1966). Granted that in so tendering the witness, appellant would have been deprived of the pleasure of introducing the witness as a former appraiser of appellees because such would have no relevancy. Biggers, supra (360 S.W.2d at 517). He would have, however, been an otherwise qualified witness, although one for whose accuracy appellants vouched by his tender.

But for the language used by the Supreme Court in Biggers, supra,[2] we would be inclined to hold that the failure of a party to produce a witness in a condemnation case should be the subject of fair comment just as in any other case. Assuming that Boyles had retained one or more appraisers "to investigate and evaluate facts and report an expert opinion," and then decided not to call such person or persons as a witness, such fact could ordinarily become the subject of proper comment by counsel in his argument. Tex-Jersey Oil Corp. v. Beck, 157 Tex. 541, 305 S.W.2d 162, 167, 68 A.L.R.2d 1062 (1957), and cases therein cited. For an excellent discussion on the subject, see Sanders v. St. Paul Fire & Marine Ins.

Co., 429 S.W.2d 516, 522–523 (Texarkana Tex.Civ.App., 1968, error ref., n. r. e.). While we are unable to see the distinction, out of an abundance of caution we decline to extend the rule as to comment on non-production of witnesses to the opponent's expert appraisal witnesses. Biggers, supra.[3]

Appellees contend that even if the trial court was in error in refusing to permit the witness to answer the question, such error was harmless. Pointing out that under the circumstances appellant cannot show (a) that there were other appraisers, or (b) what their testimony would have been, appellees are hoist upon their own petard. It was their objection which prevented appellant from making the precise proof, if it could, which would have satisfied this requirement of the rules. This argument is likewise answered by the Supreme Court decision in Biggers, from which we quote:

"We also approve the holding that refusal to permit respondents to have the testimony of the witness included in a bill of exceptions for the purpose of showing the harmful and prejudicial effect of the first ruling was such a denial of the substantial rights of the respondents as to authorize reversal of the trial court's judgment. Texas Employers Ins. Ass'n v. McCaslin, 159 Tex. 273, 317 S.W.2d 916, 921; Texas & P. Ry. Co. v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528, 530–531."

Having zealously, and successfully, preserved the anonymity of its other apprais-

2. In Biggers, the Court pointedly held that proof could not be made through the witness that he had made the appraisal for the Highway Department, saying: "As we view the matter, its tender could only be for the purpose of supporting the credibility of the witness or of creating the impression with the jury that the State was suppressing evidence. It would not be admissible for either purpose." (360 S.W.2d at p. 517) The concluding sentence of the opinion is reproduced: "And a decision not to call as a witness one

employed to investigate and evaluate facts and report an expert opinion is not a suppression of evidence." (Id. at p. 518)

3. The Fifth Circuit, following the usual rule, holds that it is proper for counsel to comment in the argument upon the failure of a party to call an appraisal witness. See, United States v. Certain Land in City of Fort Worth, Texas, 414 F.2d 1026, 1028 (5th Cir., 1969).

ers, if any, appellees are in no position to claim that appellant has failed to show harm. Harm is apparent on the face of the record. The little used provisions of Rule 434 come into play here because the error of the trial court in refusing to permit the perfection of the bill of exception "was such as probably prevented the appellant from making a proper presentation of the case to the appellate court; * * *" In this context, we call attention to the language of Justice Calvert in Texas & P. Ry. Co. v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528, 531 (1958):

> "Rules 434 and 503 do not contemplate that a party may be denied the constitutional right of trial by jury. The mere denial of that right raises an inference of probable harm. Texas Emp. Ins. Ass'n v. McCaslin, 159 Tex, 273, 317 S.W.2d 916."

There being error, the judgment of the trial court must be reversed and the cause remanded.

The fourth area of complaint is that the trial court erred in refusing a special instruction to the jury with reference to the retained rights of the landowners to the use of tract one, the large strip upon which the high lines were located. We have examined the record carefully and find that the trial court instructed the jury adequately upon all issues and that the points do not present error. Rayburn, Texas Law of Condemnation, § 183, p. 515, and cases therein cited.

█ In its fifth and final area of complaint, appellant asserts that it was error for the trial court to deny its motion to reopen the case for the purpose of interrogating one of the owners as to the appraisers he had used during the past three years, including an estate proceeding. This witness had not previously testified and the motion to reopen came after a long weekend recess of the trial. We have reviewed the record and do not find error. We recently had occasion to re-

view the cases on the authority of the trial court to deny a party the right to reopen after the evidence was closed, Highlands Underwriters Ins. Co. v. Martin, 442 S.W.2d 770, 772–773 (Beaumont Tex. Civ.App., 1969, no writ), and see no need of repeating our comments there made. The points underlying this "area of complaint" are each overruled. Rule 434.

For the error pointed out herein, the judgment of the trial court is reversed and the cause remanded.

## ON MOTION FOR REHEARING

█ As the trial court denied appellant its substantial right to perfect its bill of exceptions, we should not be required to guess that the witness would not have given the names of other appraisers employed by appellees and that the testimony of such named appraisers, if made witnesses of appellant, would not have been "material and harmful to appellees." Biggers v. State, 358 S.W.2d 188 (Dallas Tex.Civ.App., 1962) error ref. n. r. e. 360 S.W.2d 516 (Tex.Sup., 1962); J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698, 699 (1940); Miller v. Cozart, 394 S.W.2d 22, 25 (Dallas Tex.Civ.App., 1965, no writ). By denying appellant such substantial rights, it was prevented from making a proper presentation of the cause to this court.

Motion for rehearing overruled.

## STEPHENSON, Justice (dissenting).

I respectfully dissent. I would affirm the judgment of the trial court. I am not convinced that appellant has discharged the burden placed upon it by Rule 434.

The majority opinion makes the statement that appellant had a right to inquire as to the names of the other expert appraisers who had appraised the property on behalf of the landowners, but no authority is cited in support of such statement, and apparently there is none. Appellant has argued it is entitled to this information for

two reasons. First, so that it could call such appraisers as its witnesses, and second, so that it could refer to the failure of the landowners to call such appraisers. The Biggers case, cited in the majority opinion, settles the second portion of these contentions, as the obvious meaning of the last sentence of Biggers:

"And a decision not to call as a witness one employed to investigate and evaluate facts and report an expert opinion is not a suppression of evidence." (360 S.W.2d 516, 518)

is that appellant would not have been permitted to comment on such failure. In fact, under the Biggers case, as shown in the majority opinion, if appellant had secured the names of other appraisers and called them as its witnesses, it would not have been permitted to show that the landowners had employed such appraisers to make an appraisal. If the answer to the question by appellant was not relevant for these purposes, then I see no reason why the landowners should be compelled to assist appellant in securing additional expert witnesses.

In any event, I do not believe appellant has shown the action of the trial court in refusing to allow the witness to answer the question, was such a denial of appellant's rights as was reasonably calculated to cause, and *probably did cause* the rendition of an improper judgment. If the witness had been permitted to answer the question, and had stated names of other appraisal witnesses, the most appellant could have done would have been to have called such appraisers, made them its own witnesses, and have had them testify as to value and damages, which had already been fully developed. Appellant called two expert appraisers, and the landowners one, and the additional testimony of other appraisers would have been cumulative. There is nothing in this record to indicate appellant wanted or needed additional testimony as to values and damages, and that appellant needed assistance from the landowners to secure the names of additional appraisers.

The majority opinion makes the statement that harm is apparent on the face of the record, but as indicated by this dissent, harm is not so apparent to me. It is stated that the little used provision of Rule 434 comes into play because the trial court refused to permit the perfection of the bill of exception. I do not agree that such refusal, standing alone, is conclusive proof of harm. If the second portion of Rule 434 meant no more than that, then it would have been a simple matter to have incorporated that in the rule. The rule places a greater burden on the appellant and says: " * * * or was such as *probably prevented* the appellant from making a proper presentation of the case to the appellate court * * * " (emphasis supplied). It must be the sense of the rule that even though an appellant may show that it was not permitted to make a bill of exception, that the exclusion of such testimony probably resulted in the rendition of an improper judgment. I do not feel that a bill of exception in this record showing the name or names of appraisers could in itself have demonstrated sufficient harm to appellant to require a reversal.

KEITH, Justice (concurring).

I find myself in partial disagreement with both of my colleagues. I would hold that the names of the other appraisers, if any, employed by the landowners was proper, pertinent, and relevant to the case on trial. The power company could, within the limitations established by *Biggers*,[1] use the appraisers as its own witnesses; but, and of equal importance, the power company should be permitted to comment in argument upon the failure to produce such witnesses under the rationale of *Tex-Jersey*.[2]

1. Biggers v. State, 358 S.W.2d 188 (Dallas Tex.Civ.App., 1962) error ref. n. r. e., 360 S.W.2d 516 (Tex.Sup., 1962).

2. Tex-Jersey Oil Corporation v. Beck, 157 Tex. 541, 305 S.W.2d 162, 68 A.L.R.2d 1062 (1957).

Because my dissenting brother accepts as his major premise the fact that such comment upon the non-production of such appraisers, if any, would not be permissible under the final sentence found in the per curiam opinion in *Biggers,* I disagree with his analysis of the importance of the testimony. For, if comment upon non-production of the witnesses is permissible, the refusal of the trial court to permit the perfection of the bill of exception would be harmful error under the alternative portion of Rule 434. Dobbins v. Gardner, 377 S.W.2d 665, 669 (Houston Tex.Civ.App., 1964, error ref. n. r. e.).

The critical sentence quoted by both the majority and the dissent,[3] from *Biggers* is dicta. A careful examination of the opinions in *Biggers* does not indicate any possible basis for such language. The paragraph to which the particular sentence is appended as an apparent after-thought is upon an entirely different matter. West Publishing Company, in digesting the material, assigns to the main paragraph, which includes all of the *citations* one digest reference, and this orphan sentence is given a widely disparate reference. There is no reference in the cryptic sentence, or elsewhere in the per curiam opinion, to the well-reasoned opinion in *Tex-Jersey,* then only five years old and enjoying the prestige of forming the basis of a lengthy annotation in 68 A.L.R.2d 1062.

Granted that *Tex-Jersey* relates specifically to witnesses having the relationship of employer-employee, several of the cases cited therein do not rest upon any such narrow base. For instance, two of the cases[4] were workmen's compensation cases wherein the witnesses were physicians to whom the insurer had sent the plaintiff for examination, presumably after the accident

and in preparation of the case for trial. As a matter of fact, the very first case cited by Chief Justice Calvert in *Tex-Jersey* [Missouri Pac. Ry. Co. v. White, 80 Tex. 202, 15 S.W. 808, 810–811 (1891)], involved a physician, not shown to be an employee, who had moved from Texas to the Indian Territory. Nevertheless, the comment on non-production was proper and the rule was thus firmly placed in our lawbooks.

Justice Fanning, in Sanders v. St. Paul Fire & Marine Ins. Co., 429 S.W.2d 516, 522 (Texarkana Tex.Civ.App., 1968, error ref. n. r. e.), sums up the rationale of the rule in this language:

"Under the Beck case, supra, we think that the right to comment on a failure to call a witness arises from the circumstance, if made to appear, that the witness stands in such relationship with the party as to render the witness peculiarly or especially available to such party, and within the meaning of this rule, a witness is peculiarly or especially available to a party when he is shown by the record to have had such relationship with the party as would normally predispose him to favor such party and place such party in a better position to obtain material information on the point at issue from the witness. Claybrook v. Acreman, Tex. Civ.App., 373 S.W.2d 287, wr. ref., n. r. e. (1963)."

An appraiser hired to ascertain the value of real property and come prepared to express an opinion thereon, should certainly fall within the rule announced in *Sanders,* supra. The testimony would be relevant and the person hiring such witness would be in better position to produce him than his adversary. Presumably, the landowner would have retained only *qualified* appraisers so that if called the witness

---

3. "And a decision not to call as a witness one employed to investigate and evaluate facts and report an expert opinion is not a suppression of evidence." (360 S.W.2d at p. 518)

4. Meyer v. Great American Indemnity Co., 154 Tex. 408, 279 S.W.2d 575, 579 (1955), and Consolidated Underwriters v. Lowrie, 128 S.W.2d 421, 423 (Beaumont Tex.Civ.App., 1939, error ref.).

would be permitted to express an opinion on the only question in the case—market value. Beyond question, the testimony of such a witness would be relevant and material to the single issue involved. Thus, the case differs from Dallas Railway & Terminal Company v. Oehler, 156 Tex. 488, 296 S.W.2d 757, 759 (1956), relied upon by appellees.

The easiest explanation for the apparent conflict between *Biggers* and *Tex-Jersey* is to be found in the fact that the critical sentence in *Biggers* is dictum, as defined in Grigsby v. Reib, 105 Tex. 597, 153 S.W. 1124, 1126 (1913). See also, Justice Pope's landmark opinion in State v. Valmont Plantations, 346 S.W.2d 853, 878 (San Antonio Tex.Civ.Tex., 1961), affirmed and opinion adopted, 163 Tex. 381, 355 S.W.2d 502 (1962).

While an intermediate court should be extremely reluctant in even hesitating to follow a prior Supreme Court opinion because it was dicta, nevertheless, we are not required to follow such holdings under the doctrine of stare decisis. Valmont Plantations, supra (355 S.W.2d at p. 502), and the comments of Justice Hamilton with reference thereto. On the other hand, we are required, under the rule of stare decisis, to follow implicitly and without reservation, the decision in *Tex-Jersey*, a square holding upon questions presented by that record.

I would disregard the ultimate sentence in *Biggers* as dicta and follow the rule set out in *Tex-Jersey*. Thus, I would hold that when the parties to an eminent domain proceeding employ multiple appraisers but bring only one to testify (if such be the facts in this case), the adversary is privileged to comment upon the failure to produce such witnesses. Such a holding by this court in the cause would be compatible with the general rule governing trials in this state.

I join Chief Justice PARKER in over-ruling appellees' motion for rehearing.